## DANA H. ELKINS *vs.* BOSTON & ALBANY RAILROAD.

Suffolk.   March 11. — June 18, 1874.   COLT & ENDICOTT, JJ., absent.

In an action against a railroad corporation to recover for injuries sustained by the wagon, in which the plaintiff was driving on a highway crossing the railroad track, being struck by a train of cars, evidence tending to show that the wagon was being driven slowly along the highway; that the plaintiff, and another person who was driving, did not know that they had arrived at the railroad crossing, nor see or hear the engine or cars; that there was no sign-board at the crossing; that the train was going at the rate of thirty miles an hour, and that the whistle of the engine was not sounded or the bell rung before reaching the crossing, and not showing that the approaching train was in sight from the highway, is sufficient, if uncontrolled, to justify the inference that the plaintiff was in the exercise of ordinary care. And the facts that the plaintiff, a boy ten years old, in a cold afternoon in winter, had the lappets of his cap tied over his ears; that he had previous knowledge that the railroad crossed the highway at the place of the accident, and did not tell his companion of it; and that he did not look or listen for the train, are not conclusive against the plaintiff upon the issue of ordinary care on his part, if there is evidence that the plaintiff and his companion did not know that they were at the crossing, and that the defendant did nothing to warn them of it or of the approach of the train, until it was too late.

In an action against a railroad corporation for injuries sustained by being run into at a place where a highway crosses the railroad, evidence that there was no sign-board at the crossing at the time of the accident is admissible on the issue of due care on the part of the plaintiff.

In an action to recover damages for injuries sustained through the negligence of the defendant, the age of the plaintiff is admissible in evidence to show that he exer‧ cised such care as was reasonably to be expected of him.

In an action by a boy ten years old for a personal injury, a physician called as a witness for the plaintiff testified to the extent of the injury. The defendant offered to show that the physician and the plaintiff's mother three years before the injury drove together to an apothecary's shop and there remained until one o'clock at night, under circumstances showing great intimacy. *Held,* that this evidence might properly be rejected by the presiding judge as immaterial.

Upon a motion for a new trial a verdict which, upon the issue submitted to the jury, is against the weight of evidence introduced at the trial, cannot be sustained by the opinion of the court upon a distinct ground of liability, which has not been alleged or tried.

In an action against a railroad corporation to recover damages for injuries sustained by a train of cars striking the wagon in which the plaintiff was riding at a highway crossing, the declaration charged the defendant with not ringing a bell before crossing the highway, but did not allege that there was no sign-board at the crossing, or that the absence of a sign-board there had any connection with the accident. At the trial, evidence of the absence of the sign-board was admitted only on the issue of due care on the part of the plaintiff, and the jury were instructed that the defendant could be held liable only upon the ground alleged in the declaration. The jury found a verdict for the plaintiff, and a motion for a new trial having been argued, the judge reported that he was of opinion that the evidence did not warrant the jury in finding that the defendant was in fault in respect of ringing the bell or sounding the whistle, or negligent in any manner in the running of the train, and that the verdict ought to be set aside for that reason; unless the failure to maintain a sign-board at the crossing might properly be considered as evidence of such negligence, or as a ground of liability, either under the present or under an amended declaration. *Held,* that even though the want of a sign-board would be a ground of liability under an amended declaration, the defendant was entitled to a new trial.

Tort for personal injuries sustained by the plaintiff. The declaration contained three counts. The first count was for negligence of the defendant in driving its engine and cars over a crossing at grade in the town of Natick, and thereby injuring the plaintiff, then travelling on the highway, and using due care. The second count was for negligence of the defendant in not ringing a bell of at least thirty-five pounds' weight at the distance of at least eighty rods from said crossing as required by law, or any bell before crossing said highway, the plaintiff using due care. The third count was for running into the plaintiff, at said crossing, with its cars and engine, without ringing any bell, as required by law, before reaching such crossing, the plaintiff using due care.

At the trial before *Wells,* J., the jury returned a verdict for the plaintiff for $3500, and the following report was made to the full court: " The plaintiff, on February 21, 1871, being at that time ten years old, was riding with another boy sixteen years

old, named Enos H. Bigelow, in a four-wheeled buggy chaise drawn by one horse, in a southerly direction, over a road in the town of Natick, crossing at grade the railroad of the defendant; and just as the carriage crossed the track, the hind wheel was struck by the engine on the quarter past five o'clock afternoon train, then coming from South Framingham on the way to Boston.

" Enos H. Bigelow, a witness called by the plaintiff, was asked by the plaintiff's counsel whether, just before the collision, while riding towards the crossing, he saw any sign-board at the crossing. The defendant objected to the evidence, on the ground that the plaintiff had not alleged in his declaration that at the time of the collision there was no sign-board at the crossing, or that the absence of a sign-board at this crossing had any connection with the collision or alleged injury. The court admitted the evidence, not for the purpose of showing negligence in the defendant, but as bearing on the question whether the plaintiff was in the exercise of due care at the time. To this ruling the defendant excepted. The witness answered that there was no sign-board at the crossing at this time. The court admitted, against the defendant's objection and subject to the defendant's exception, other evidence tending to show that there was no sign-board at this railroad crossing at the time of the collision, for its bearing on the question of the plaintiff's care at the time, but not for the purpose of showing negligence in the defendant.

" Enos H. Bigelow, a witness called by the plaintiff, testified as follows: ' Sometime after four o'clock in the afternoon, on February 21, 1871, I started in a top-buggy from Framingham, and drove to the house of the Elkins boy, and there took the Elkins boy in. I had never seen the Elkins boy before; don't know how far this was from the railroad; should think one or two miles. I didn't know the road. I was driving, sitting on the left side, and the Elkins boy on the right side. The carriage was four-wheeled and covered, and was going at an ordinary rate of speed; the horse was not a very good one for speed; I quickened him up once in a while; was going at a fair trot. I saw no sign; I first knew I was on the railroad from hearing a sharp quick whistle right at the side of the crossing; previous to that had heard no whistle or ringing of a bell. When I heard the whistle I had my watch out, and the reins were in

one hand; I then put the watch in my mouth and seized the reins, and that is all I know. Till I heard the whistle, I did not know there was a railroad track. It seemed to me the whistle was right by the boy. I did not hear the engine or cars; ground was frozen; carriage not new — don't know how old — and rattled some, and the ground was rough. It was between five and six o'clock. I did not see by my watch what time it was. It was growing dusky at the time.' *Cross-examined.* ' I went for Mrs. Allard, the teacher, to get the boy's mother. She was not at home, and the boy Elkins went with me to show where his mother was. I hadn't much conversation with the boy while riding along. I remember talking with him; I was looking at my watch to see what time it was, not showing it to the boy. I was told to get back by six o'clock, and was not hurrying. I had quickened the horse, — had struck him with the whip.'

" Jackson W. Parker, a witness called by the plaintiff, testified: ' I live near the crossing; lived there all my life; for forty-three years. This road crossing the railroad has been used as a high-way as long as I remember anything. I remember seeing these boys driving by. I went out the back door to get a rope to tie the horses. I saw this team go by, and did not see them after-wards. Both the houses near the crossing are mine. The horse was going at a slow trot, in my sight, for a distance from one corner of the court room to the other; cars then came along; they blowed the whistle just before they got to the crossing, then whistled for brakes, to stop; cars were ten or fifteen rods from the crossing when they whistled, as near as I could judge. I heard the cars coming. I don't remember hearing any bell or whistle before. I saw that there was a smash-up, and went down; the boys were together; Bigelow boy was hurt; Elkins boy said he was not hurt; both boys were walking around, as I supposed, hunting up the horse.' *Cross-examined.* ' The crossing was from fifteen to thirty rods from my house, and my house is on the east side of the street. I went home with the Bigelow boy; the Elkins boy went home on foot. Elkins boy used to pasture a cow in my field the summer before, within twenty or thirty rods north of my house. There is a school-house about eighty rods north of the railroad. I had just come out of the house that minute when I saw these boys driving by.

I came out and was fussing with a rope and heard the first whistle. The first whistle was a crossing whistle, what I am in the habit of hearing when the cars are at the eighty-rod post. I could see them, the boys, till within a few rods of the crossing. I could have seen the cars before I saw them first if I had looked up. The whistle was a quarter of a minute in length; then they broke up.'

" Charles Hyde, a witness called by the plaintiff, testified as follows: ' At the time of the accident I lived at the first house on the right-hand side north of the crossing. I didn't see the boys; I saw the carriage going by right opposite the house, horse going at a common trot; didn't see who was in the carriage; horse and carriage were in view till they reached the crossing; when they got to the crossing I saw the cars on to them. My house is on an elevation. I didn't see the cars till I saw their carriage on the track. I heard the cars whistle five rods, I should judge, from the crossing. I didn't hear any ringing of the bell or any whistling before. I could look from my house to the crossing. At the time of the whistle the carriage was about on the track; I couldn't tell exactly where, but about on the track. I didn't see the collision, and I didn't go out of the house or down to the crossing. No sign-board at the crossing.' *Cross-examined.* ' When the carriage passed I was in the kitchen on the south side of the house towards the railroad. I was standing at the window, at work; I saw the carriage when opposite the house, no window in the road side of the room I was in; window and doors of the room were shut. First I heard was the whistle; I was looking towards the crossing at the time; I saw the cars right after I heard the whistle; whistle might have been a quarter of a minute long, but it did not seem so. Cannot say if the carriage got to the line of the fence along the northerly side of the railroad; I saw the cars, carriage and all, at the same time; I expected to see them smashed, all the time. Mr. Parker came to my house with the boys; there a half hour with me and wife; Elkins boy showed no bruise; answered questions; said he was not hurt; he had on a thick overcoat and tippet on his neck, cap on his head. I was at work on shoes; I stopped working and looked at the carriage after it passed, the cars were so near. I heard the cars before I heard the whistle; that made me think

the carriage was in danger. I saw the carriage, and then heard the cars when the carriage was between the house and the crossing, half-way down. From that time I watched it because I thought it had not time to get across the track. One quarter of a minute after, I heard the whistle. I first supposed there was no one in the team, it was going so slow. I thought it ought to stop or go faster. I think they had a chance to get by the crossing; I didn't hardly know; I thought no one was in the carriage, because they didn't go faster. I saw no jumping of the horse; should not suppose there was any difficulty in stopping the horse before the crossing; I should have supposed they had time enough. I thought they were pretty careless.'

" Persis Allen, a witness called by the plaintiff, testified that she was his grandmother; that the plaintiff had lived with her before the accident and attended school; that he had work three or four days with his uncle on the south side and near this crossing, going in the morning and returning at night; that she used to caution him about crossing the railroad.

" Addie Merrill, called by the plaintiff, testified that before the accident the plaintiff attended the school where she taught, and that the school-house was on the road which makes this crossing where the collision was, and that the school-house was about twice as far from the crossing as the house of Parker, the former witness, on the same side of the crossing.

" The plaintiff testified as follows: ' I remember the time Enos Bigelow started off with me to go to Natick village. The place where I was was my grandmother's, and was one and one half or two miles from the crossing. We were talking right along the same as anybody. My attention was not called to the railroad. I did not hear the cars before on the crossing. I did not hear any whistle or bell, or see the cars. The first thing I knew I was on the railroad. When on the railroad I heard a whistle. I don't know what next happened. I found myself on a pile of sleepers. I don't remember the Bigelow boy's taking his watch out. I remember his putting it in his mouth on the sound of the whistle. The whistle seemed to be right on to us. I knew the railroad ran across this road. There was nothing to remind me of it — never thought of it. Nothing was said to me about it by the Bigelow boy. There was no light of the car.' *Cross-examined.*

' The horse before reaching the crossing was going along as he was a mind to. I had on a fur cap: a tippet around my neck, and a cap on. The cap had pads. The pads were over my ears and tied under my chin. I knew the cars came there, and I knew this crossing; my grandmother had cautioned me against this crossing. I didn't look to see the train or listen at all. I said nothing about the crossing to the Bigelow boy. I had been to school near there. I pastured a cow near there, on the same side as Mr. Parker's house. Sometimes went to the village by way of this crossing, and sometimes the other way. Worked at my uncle's before the accident, not since. The whistle was a short one; about one quarter of a minute long. We were right on the track. The horse was on the track. We were on the north rail and the horse on the south rail when I first heard the whistle. I didn't touch the horse. I remember nothing after hearing the whistle. I didn't see the cars.'

" This was all of the plaintiff's evidence, bearing upon the question whether the plaintiff at the time was in the exercise of due care.

" The defendant's counsel asked the court, on the conclusion of the plaintiff's case, to rule that on this evidence the plaintiff could not recover, as it showed contributory negligence on his part, and did not show that he was in the exercise of due care. The court declined so to rule, and the defendant excepted.

The defendant called several witnesses who were upon the train, to testify that the whistle was sounded and the bell rung at the proper point and for the proper time before reaching the crossing, and that no reasonable precaution to prevent the collision was omitted on the part of those in charge of the train. The evidence tended to show that the usual rate of speed of the train at that point is at least thirty miles an hour, and that the train was going at its usual rate of speed at the time of the accident.

" When all the evidence was in, the defendant renewed the above request. The court refused so to rule, and submitted the case to the jury, and the defendant excepted.

" The plaintiff produced as a witness, the physician who attended the boy at the request of his mother after the accident, who testified that in his judgment the plaintiff had had epilepsy as a consequence of the accident. The defendant introduced evi

dence tending to show that the plaintiff had not sustained any serious injury, and had not had epilepsy, and to show the bias under which the physician gave his evidence, offered evidence to show a great degree of intimacy between this physician and the plaintiff's mother; that they drove up together one night to an apothecary's store, and so remained till one o'clock at night, under circumstances showing great intimacy, some three years before the accident. The court excluded the evidence, and the defendant excepted.

" The court, among other instructions, instructed the jury as follows: The plaintiff must satisfy you that he was not in fault. He is bound to take care, if knowingly approaching a railroad, to see if a train is coming. He has no right to go upon a railroad and neglect to use his ears and eyes. Did the plaintiff use reasonable precaution? In determining this, you should consider his age, his familiarity with the place, the fact that the other boy was driving, and how far he had a right to rely on the other boy. Consider the fact that he was familiar with the place, and the other was not. Consider this in connection with the facts that there was no sign-board, and that the boy knew of the railroad. Consider whether it was negligence in the plaintiff to pay no attention, and not call the other boy's attention to the railroad. The plaintiff was not bound to an extreme anxiety of care, but to reasonable precautions. If he failed in such care as was reasonably required under the circumstances, or failed to caution the other boy when in the exercise of reasonable care he should have done so, the defendant is not liable. To these instructions the defendant excepted.

" In respect to the alleged negligence of the defendant, the court instructed the jury that the only ground on which the defendant could be held liable was for failure to ring the bell or sound the whistle for the eighty rods before reaching the crossing, that if the bell was rung or the whistle sounded for that distance before reaching the crossing, or if the jury were not satisfied that there was a failure so to ring the bell or sound the whistle, the defendant was not liable; but if the bell or whistle were not one or the other sounding for that distance, the defendant was negligent; and if this negligence was the cause of the accident, and the plaintiff was in the exercise of due care, the defendant was liable in this action.

" The defendant then asked the court to give the jury the fol-
lowing instructions : 1. That the absence of a gate or a flagman
was no evidence of negligence on the part of the defendant, there
being no evidence of any requisition on the part of the proper
authorities therefor.    2. That at all events, it was not so, unless
under ordinary circumstances, the nature and character of the
crossing were such that, in the exercise of ordinary care on their
part, the plaintiff has satisfied the jury that this was a reasonable,
proper and necessary precaution in general, and at the particular
time, place and circumstances of the accident.    3. That it is the
plaintiff's duty to satisfy the jury of this; and further, to satisfy
the jury that such omission was the efficient cause of the alleged
injury.    4. That if the plaintiff knew of the crossing and omitted
to make any use whatever of his senses, to ascertain if a train
was crossing, it was contributory negligence, which would deprive
him of any right to recover, without regard to the absence or
presence of a flagman.    5. If the plaintiff knew that there was a
railroad crossing at the place in question, it was his duty, in the
exercise of due care, to make a reasonable use of his sense of
sight as well as of hearing, in order to ascertain whether he
would expose himself to a collision ; and if he made no use at all
of these senses for that purpose, it was contributory negligence on
his part, which would preclude any right of recovery against the
defendant.    6. If there was a railroad crossing at the place in
question, and the plaintiff knew it and did not look or listen to
ascertain if any train was coming, because he did not think of it,
it was a want of due care, which deprives him of any right to
recover.

" The court declined to add anything to the instructions already
given ; and the defendant alleged exceptions to the rulings and
instructions above stated.

" The defendant also filed a motion for a new trial, on the
ground that the verdict was contrary to the evidence.    Upon a
hearing, I am of opinion that the evidence did not warrant the
jury in finding that the defendant was in fault in respect of ring-
ing the bell or sounding the whistle, or negligent in any manner
in the running of the train, and that the verdict ought to be set
aside for that reason ; unless the failure to maintain a sign-board
at the crossing might properly be considered as evidence of such

negligence, or as a ground of liability for the injury to the plaintiff, either under the present counts or under an amended declaration. For the purpose of presenting this question to the full court, as well as those raised by the defendant's exceptions, I order the whole case to be reported. If all the rulings and instructions excepted to by the defendant should be sustained, but it should be held that the failure of the defendant to maintain a sign-board at the crossing cannot avail the plaintiff in any manner, then a new trial is to be granted upon the motion therefor; otherwise the case is to stand for hearing and further order upon that motion. The defendant is to have the benefit of the exceptions alleged as above, to the same extent as if they had been separately allowed."

*G. S. Hale*, for the defendant.

*T. H. Sweetser & W. S. Gardner*, for the plaintiff.

GRAY, C. J. The evidence introduced by the plaintiff at the trial tended to show that the wagon was being driven slowly along the highway, that the plaintiff and the boy who was driving did not know that they had arrived at the railroad crossing, nor see or hear the engine or cars, that there was no sign-board at the crossing, that the train was going at the rate of thirty miles an hour, and that the whistle of the engine was not sounded nor the bell rung before reaching the crossing; and did not show that the approaching train was in sight from the road. This evidence, if not controlled by evidence on the part of the defendants, would justify the inference that there was ordinary care on the part of the plaintiff. The facts that the plaintiff, a boy ten years old, on a cold afternoon in winter, had the lappets of his cap tied over his ears, that he had previous knowledge that the railroad crossed the road at this place, and did not tell his companion of it, and that he did not look or listen for the train, were elements to be considered by the jury. But, taken in connection with the facts (if believed by the jury) that the plaintiff and his companion did not know that they were at the crossing, and that the defendants did nothing to warn them of it, or of the approach of the train, until it was too late, they were not conclusive against the plaintiff upon the issue of ordinary care on his part at the time of the accident. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. *Commonwealth* v. *Fitchburg Railroad*, 10 Allen, 189. *Reed* v. *Deerfield,* 8 Allen, 522.

The want of a sign-board at the crossing was rightly admitted in evidence as bearing upon the question whether the plaintiff and his companion knew or should have known that they were approaching the crossing, and therefore upon the issue whether they used ordinary care to guard against the accident.

The age of the plaintiff was also competent evidence upon the question whether he had used such care as was reasonably to be expected of him. *Lynch* v. *Smith*, 104 Mass. 52. *Lane* v. *Atlantic Works*, 107 Mass. 104, and 111 Mass. 136. *Railroad Co.* v. *Gladmon*, 15 Wallace, 401.

The evidence offered by the defendants, tending to show intimacy between the physician called as a witness for the plaintiff and the plaintiff's mother on one occasion three years before the accident, might properly be rejected by the presiding judge as remote and immaterial.

The instructions given to the jury met and covered the instructions requested, and were sufficiently favorable to the defendants.

All the exceptions taken by the defendants at the trial must therefore be overruled, and it only remains to consider the motion for a new trial.

The presiding judge has found as matter of fact that the whole evidence in the case did not warrant the jury in finding that the defendants were in fault in respect of the bell, sounding the whistle, or managing the train, and that the verdict cannot therefore be sustained on either of those grounds.

Those grounds are the only ones which have been tried, or which the defendants have had any opportunity to contest; for the failure of the defendants to maintain a sign-board at the crossing was not alleged in the declaration, and was distinctly excluded from the consideration of the jury, except so far as it bore upon the issue of due care on the part of the plaintiff; and the jury were expressly instructed that the only ground on which the defendants could be held liable was for failure to ring the bell or sound the whistle for the eighty rods before reaching the crossing.

If negligence in not maintaining a sign-board at this crossing had been alleged as a ground of action, and it had been found by a jury that the defendants should have erected such a sign-board

and that their neglect to do so occasioned the injury to the plaintiff, they might have been held liable. *Linfield* v. *Old Colony Railroad*, 10 Cush. 562.

But a verdict which, upon the issue submitted to the jury, is against the weight of the evidence introduced at the trial cannot be sustained by the opinion of the court upon a distinct ground of liability, which has not been alleged or tried, and which can only be put in issue by an amendment of the declaration and by evidence which the jury have never been permitted to consider, nor the defendants to be heard upon before them. *Rex* v. *Malden*, 4 Bur. 2135. *Wheelock* v. *Wheelwright*, 5 Mass. 104. *Tyler* v. *Ulmer*, 12 Mass. 163. *Shaw* v. *Boston & Worcester Railroad*, 8 Gray, 45, 76, 77. *Cairns* v. *Cairns*, 109 Mass. 408.

*Verdict set aside, and new trial ordered.*