JOHN J. LEWIS, an Infant, by JENNETTE L. LEWIS, his Guardian ad Litem, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

1. APPEAL — COURT OF APPEALS PROHIBITED FROM REVIEWING SUFFICIENCY OF EVIDENCE. Where the Appellate Division has unanimously affirmed a judgment below, and subsequently allows an appeal therefrom upon a question of law, the Court of Appeals has no power to examine or determine whether there is any or sufficient evidence to sustain the verdict.

2. NEGLIGENCE — ACTION BY ENGINEER OF RAILROAD TRAIN IN AN EMERGENCY. Where an excursion coach, moving at the rate of five to seven miles an hour, suddenly presents itself, at a railroad crossing, to the view of the engineer of a train four hundred feet from the crossing, and which is approaching at the rate of thirty-five miles an hour, and he has only about eight seconds to determine what he will do in the matter, it is erroneous for the trial court to charge, in an action brought by a person who was on the coach and was injured by the resulting collision, that if the engineer, after seeing the horses of the coach, omitted to do "any act" which might have prevented the collision or lessened the danger, the railroad corporation was guilty of negligence, as such instruction ignores the situation at the time of the accident, and permits the jury to find negligence without regard to the facts and circumstances, such as the short period of time in which he was obliged to act, the impending danger and consequent excitement, the various acts required to stop or lessen speed and all the other circumstances surrounding him.

3. DRIVING ON STEAM RAILROAD TRACK WITHOUT STOPPING. It is proper for the trial court to refuse to charge, in such an action, that it is negligence as a matter of law to drive on a steam railroad track, at a point where the view is obstructed, without stopping, as the rule is that, while the traveler must listen and look, he is not required also to stop, and his omission to do so is a fact for the consideration of the jury.

4. OMISSION TO COMPLY WITH STATUTE RELATING TO SIGNBOARDS. A railroad corporation is not entitled to a charge, in an action brought by one who was injured at a railroad crossing which he had

never seen before, that no negligence can be imputed to the corporation by reason of the size or shape of the danger signal at the crossing, or the language of the warning to the public, or the length of its letters — these failing to comply with the Railroad Law (L. 1890, ch. 565, § 33) — as, in the case of one who is a stranger to the crossing, a failure in such respects might constitute actionable negligence, and justify a recovery when the injury was caused by a disregard of the statute.

5. DEGREE OF CARE REQUIRED AT A RAILROAD CROSSING. A traveler, approaching a railroad crossing, is bound to exercise ordinary, but is not bound to exercise extraordinary, care to detect an approaching train.

6. RELATION OF MASTER AND SERVANT. The relation of master and servant, and the consequent responsibility of the former for the acts of the latter, does not exist between associates who have hired a coach and its driver, it appearing that they neither selected nor paid him, and, at most, had only a right to order him to go forward or stop.

*Lewis* v. *Long Island R. R. Co.*, 30 App. Div. 410, reversed.

(Argued January 10, 1900; decided February 27, 1900.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 13, 1898, upon an order unanimously affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The appeal was allowed by the Appellate Division upon the ground that a question of law had arisen in this case which in its opinion ought to be reviewed by the Court of Appeals.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Benjamin F. Tracy* and *William J. Kelly* for appellant. The trial judge erred in charging as requested by plaintiff's counsel. "If you find that the engineer of the defendant's train, after seeing the horses attached to the tally-ho in which plaintiff was seated, omitted to do any act which might have prevented the collision, or might have lessened the danger to plaintiff, defendant was guilty of negligence." ( *Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465; *Chrystal* v. *T. & B. R. R. Co.*, 105 N. Y. 164; *Bittner* v. *C. S. Ry. Co.*, 12 Misc. Rep. 517; *Twomley* v. *C. P., N. & E. R. R. R. Co.*, 69 N. Y. 158; *Schneider* v. *S. A. R. R. Co.*, 133 N. Y. 586; *Stabe-*

*nau* v. *A. A. R. R. Co.,* 155 N. Y. 511; *Wynn* v. *C. P., N.
& E. R. R. R. Co.,* 133 N. Y. 575; *Baker* v. *E. A. R. R. R.
Co.,* 62 Hun, 39; *Voak* v. *N. C. Ry. Co.,* 75 N. Y. 320;
*Cuyler* v. *Decker,* 20 Hun, 173.) The court erred in refus-
ing to charge the defendant's request, that "the plaintiff, unit-
ing with others of the society in hiring so unusual and extra-
ordinary a turnout for a day's outing in the country as a tally-ho
coach, having a brake and drawn by six horses and carrying
twenty-one people, so identified himself with the coach and
driver that the negligence of the driver will be imputed to the
plantiff, and if such negligence contributed to produce the col-
lision between the engine and the coach the plaintiff cannot
recover." (*Allyn* v. *B. & A. R. R. Co.,* 105 Mass. 77;
*McLaughlin* v. *Pryor,* 4 M. & G. 48; *Rourke* v. *W. M. C.
Co.,* L. R. [2 C. P. Div.] 205; *Brown* v. *N. Y. C. R. R. Co.,*
31 Barb. 385; 32 N. Y. 597; *Titus* v. *Town of New Scotland,*
90 Hun, 468; *Smith* v. *N. Y. C. & H. R. R. R. Co.,* 38 Hun,
33.) The court erred in refusing to charge the defendant's
request, "that the plaintiff, uniting with others of the society, in
hiring so unusual and extraordinary a turnout for a day's out-
ing in the country as a tally-ho coach, having a brake and drawn
by six horses, and carrying twenty-one people, made himself
responsible for the competency of the driver and of the helper;
and if the incompetency of the driver, or of the helper, con-
tributed to produce the collision between the engine and the
coach, the plaintiff cannot recover." (*Robinson* v. *N. Y. C.
& H. R. R. R. Co.,* 66 N. Y. 11; *Dwyer* v. *E. Ry. Co.,* 71
N. Y. 228.) Plaintiff and his associates were so identified in
a common enterprise that the negligence of his associates
contributing to this accident should be attributed to the plain-
tiff and prevent his recovery. (*Donnelly* v. *B. C. R. R. Co.,*
109 N. Y. 16; *Beck* v. *E. R. F. Co.,* 6 Robt. 82; *Kessler* v.
*B. H. R. R. Co.,* 3 App. Div. 426.) The exception to the
refusal to charge that "it was negligence, as matter of law, to
drive on a steam railroad track with the view obstructed at a
jog trot, or at such a rate of speed that the horses could not be
stopped or turned before going over the tracks," is well taken.

(*Salter* v. *U. & B. R. R. R. Co.*, 75 N. Y. 273 ; *Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430 ; *Nash* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 715.)

*Albert A. Wray* for respondent. As it appears from the record that the affirmance by the Appellate Division was unanimous, this court is compelled by the Constitution and the statute to presume that there was sufficient evidence to sustain the facts found by the jury. (*Ayres* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254 ; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219.) The only questions open to review by this court are the exceptions taken to the rulings relating to evidence and to the charge. (*Ayres* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254.) It was not negligence for plaintiff to fail to warn the driver of danger that he was himself unaware of. The request to charge was misleading, as it assumed that the signboard and railroad track were "obvious" to plaintiff; whereas that was an issue of fact in dispute, and was for the jury to pass upon. (*Zwack* v. *N. Y., L. E. & W. R. R. Co.*, 160 N. Y. 362.) Defendant's request to charge that if, on the evidence, the danger sign was in view, etc., had he looked for it, etc., he was negligent as matter of law in not looking and observing the existence of the railroad track, was properly refused. (*McRickard* v. *Flint*, 114 N. Y. 222 ; *Judson* v. *C. V. R. R. Co.*, 158 N. Y. 597 ; *Zwack* v. *N. Y., L. E. & W. R. R. Co.*, 160 N. Y. 362.) It was not negligence as a matter of law to drive on the crossing without first stopping. (*Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 400 ; *Judson* v. *C. V. R. R. Co.*, 158 N. Y. 597 ; *Baxter* v. *T. & B. R. R. Co.*, 41 N. Y. 502.) The charge to the jury, as a whole, was neither contradictory nor confusing, but it submitted the facts to them under clear and intelligible instructions as to the law, which were most favorable to defendant. (*Gillespie* v. *D. D., E. B. & B. R. R. Co.*, 12 App. Div. 501 ; *Hickenbottom* v. *D., L. & W. R. R. Co.*, 122 N. Y. 91 ; *Batty* v. *N. F. H. P. & M. Co.*, 37 App. Div. 94.) The plaintiff and his associates were not

engaged in a joint enterprise with the driver, and his negligence, if any, could not be imputed to plaintiff. (*Robinson v. N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 11; *Dyer* v. *Erie Ry. Co.*, 71 N. Y. 228; *Kessler* v. *B. H. R. R. Co.*, 3 App. Div. 426; *Hennessy* v. *B. R. R. Co.*, 147 N. Y. 721; *Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 N. Y. 199; *Phillips* v. *N. Y. C. & H. R. R. R. Co.*, 127 N. Y. 657; *Welden* v. *T. A. R. R. Co.*, 3 App. Div. 370; *Masterson* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 247; *Brickell* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 290; *Callahan* v. *Sharp*, 3 App. Div. 428.) It was not error to charge that defendant was liable for the engineer's omission to do any act that might have prevented the collision, or lessened the damage to plaintiff, after he saw these horses. (*Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 558; *Spooner* v. *D., L. & W. R. R. Co.*, 115 N. Y. 22.)

MARTIN, J. The allowance of this appeal does not enable us to examine or determine whether there is any or sufficient evidence to sustain the verdict, inasmuch as the affirmance by the Appellate Division was unanimous. (*Reed* v. *McCord*, 160 N. Y. 330.) Therefore, the questions of the defendant's negligence and the plaintiff's freedom from contributory negligence cannot be reviewed by this court.

The only questions that can be passed upon by us are those raised by the defendant's exceptions to rulings of the court upon the admission or rejection of evidence, and to its charge or refusals to charge as requested by the defendant. To a proper understanding of these exceptions a brief statement of the facts seems necessary.

This action was for negligence. The plaintiff was injured in a collision which occurred at about two o'clock in the afternoon of the thirty-first day of May, 1897, at a grade crossing of the Merrick road over the defendant's track. The plaintiff, with a number of associates, engaged a tally-ho coach drawn by six horses to convey them from Brooklyn to Valley Stream and return, a distance of about thirty miles. The

horses were gentle and the coach was in order.   There were twenty-one persons upon and in it at the time of the accident. The trip was to be made in pursuance of a contract with one Hamilton, a liveryman, to transport the party the round trip for thirty dollars, he to furnish the coach and teams and send them in charge of a competent driver.   The teams and coach were entirely under the control of Hamilton's employees, except that the plaintiff and his associates were perhaps authorized to determine where they would stop for lunch. The Merrick road, over which this excursion was to be made, is a smooth macadamized highway to the extent of eighteen feet in width, upon which there is a great amount of travel. The right of way is about fifty feet in width, and outside of the macadamized portion there are ditches and earth which are overgrown with grass and weeds, except about four feet on each side next to the macadamized portion.

At the place of the accident the crossing was planked, so that the spaces between the rails, the rails and the macadamized road on each side of the track presented a smooth even appearance, the top of the rails being even with the roadbed and planking.   There was a signboard beyond the crossing which was to some extent obscured by telegraph poles between it and the track.   This board, instead of being maintained across the street as required by the statute, was placed upon a single post at the side of and six feet from the edge of the macadamized road.   The words painted upon the signboard were not those required by the statute, nor were they of the size prescribed.   Section 33 of the Railroad Law requires that such signboards shall be placed, well supported and constantly maintained, *across* each traveled public road or street, where the same is crossed by a railroad at grade; that they shall be so elevated as not to obstruct the travel and so as to be easily seen by travelers, and that on each side shall be painted in capital letters, each at least nine inches in length and of suitable width, the words: "Railroad crossing; look out for the cars."   The board which was erected at this place

8

was upon a single post to which three boards were fastened, one at right angles with the post, the other two extending from the ends of the first to and beyond the post, crossing each other thereon.   Upon these boards were painted the words: "Danger, railroad crossing."   On the side of the road, back of and extending a considerable distance beyond the sign-board, were trees and underbrush from twenty-five to thirty feet high.   The proof, while in conflict as to the distance this board could be seen by travelers, tended to show that it could be seen by one who knew of its existence for a considerable distance, while by a stranger who was not aware of its presence, it would not be readily seen or noticed.   There were no gates or flagman at this crossing.   Upon one of the telegraph poles, standing near the signboard, there was an electric signal bell about ten feet above the ground.

For some distance from the crossing and up to it there are trees, woods and underbrush on both sides of the highway, which upon the left side extend to within eighteen feet of the crossing, obscuring the view of the track from the highway. At a point in the center of the highway thirty-four feet from the track, it could be seen for nearly two hundred and eleven feet from the crossing, and a clear and unobstructed view could be obtained twenty-four and one-half feet from the nearest rail.   It was seventy feet from the rear of the coach to the heads of the leaders in the team.   While previously there had been considerable jollity among the young people upon the coach, including the blowing of horns and the sounding of a bugle, at the time of the accident no unusual noise was being made, and the team was going slowly, some of the horses upon a walk and the others upon a slow trot.

The plaintiff was seated upon the top of the coach, where he could observe what came within the line of his vision.   He had never been over the road before, and knew nothing of the location of the railroad or its crossings.   As the coach approached the crossing he looked both ways, but saw nothing to indicate its presence or any approaching danger.   The train came from the left of the highway, upon which side there

were woods obscuring the plaintiff's view. The locomotive was not using steam, and the sound of the train was obstructed or interfered with by the woods. The track was wet from previous rain. A number of witnesses testified that they were in a position to have heard the sounding of the whistle or the ringing of the bell if it had been blown or rung, but that they did not hear either. Upon the other hand, the defendant's witnesses testified that the engine whistled a number of times at different stations and crossings within a few miles of the point where the accident occurred, and that it whistled a quarter of a mile away. They also testified that the engine bell was rung from that distance to the crossing. One of the defendant's employees, or rather a student fireman upon the engine, testified that the whistle was not blown until the train was within four hundred feet of the crossing, and that the fireman was lazily ringing the bell for about eighty rods, but that it did not ring loudly, for the clapper just touched the sides with a slow motion. There was also proof that the automatic signal near the crossing could be heard for a distance of a quarter of a mile when it rang, but that it did not ring on the approach of this train.

The train was moving thirty-five miles an hour, or at the rate of over fifty-one feet per second. The coach was going from five to seven miles an hour, or from about seven to ten feet per second. As the coach approached, no one upon it discovered the crossing or the track until the horses were within about ten feet of the rails. At that time the driver was within fifty feet of the track, the plaintiff sixty-five feet away, and their view of the approaching train was obstructed by the woods. No sound of its approach had been previously heard. At that time, however, one of the party, who stood upon the highest part of the coach, saw the train, cried out, "Here comes a train," and immediately jumped from the side of the coach to the road. He struck the ground about thirty feet from the nearest rail. When the warning was shouted by the young man who jumped off the leaders were over, the body team was just crossing, and the wheelers were

upon the track.   Upon discovering the situation, to save him-
self and his passengers, the driver seized his whip and lashed
the team into a jump.   The train was late and did not slacken
its speed until it struck the coach near the middle, demolish-
ing it, throwing the passengers to the ground and killing or
maiming most of them.   The plaintiff was thrown a distance
of one hundred and twenty-four feet and landed upon a sand
pile.   He sustained a fracture of the shoulder blade and vari-
ous bruises and contusions upon his head and other portions
of his body.   The defendant's engineer testified that he could
stop the train within five hundred feet, but it was not stopped
until it had passed the crossing, a distance of seven hundred
and seventy-five feet.   The team was across and the coach
was nearly across the track when the collision occurred.   The
engineer of the defendant saw the horses as they came from
behind the woods, but they passed over a distance of twenty-
four feet after he saw them before he applied the brakes or
undertook to stop the train.   He used no sand upon the track,
but reversed the engine, which locked the wheels so that they
slid, and the train did not stop as soon as it otherwise would.

The plaintiff's associates who made the contract for the
team, selected the coach to be furnished for this excursion,
and it was decorated with bunting by them.   The young men
who hired this equipage took a number of young women with
them.   No particular place had been selected where their
luncheon was to be eaten, and previous to the time of the acci-
dent they had been looking for a place.

Having thus briefly stated the facts, so far as necessary to
a proper understanding of the questions involved, we are
brought to the consideration of some of the exceptions taken
upon the trial.   While we have examined them all, we find but
few that require special consideration.

The first and only serious question raised by the exceptions
of the defendant relates to the charge of the learned trial
judge.   At the conclusion of the principal charge the plain-
tiff requested the court to charge as follows: "If you find
that the engineer of the defendant's train, after seeing the

horses attached to the tally-ho in which plaintiff was seated, omitted to do *any act* which might have prevented the collision, or might have lessened the danger to plaintiff, defendant was guilty of negligence." The court so charged, and the defendant excepted. The appellant now urges that this was error, for which the judgment should be reversed.

The engineer upon the defendant's train first saw the leaders of the team attached to the tally-ho when the train was about four hundred feet from the crossing. It was then running at the rate of thirty-five miles an hour and he did not attempt to stop it until he saw the team coming upon the track, when he applied the emergency brake and reversed the engine. At the rate of speed which the train was running only about eight seconds elapsed after he first saw the horses when the collision occurred. Thus, he was suddenly confronted with an emergency, having but a few seconds in which to take such precautions as were possible to prevent the accident or mitigate the injury. The acts necessary to stop the train were described upon the trial, and the engineer testified as to what was done. The effect of this charge was to instruct the jury that if the engineer omitted any one thing which might have prevented the collision, or lessened the danger, the defendant was guilty of negligence. This, in effect, was an instruction that if it should find that any such act was omitted, then, as a matter of law, the defendant was negligent. This may have presented to the minds of the jury the situation as it existed under the proof and subsequent to the time of the accident. The jury could properly consider only the situation as it was found to have existed when the accident occurred, and in the light of all the facts and circumstances which surrounded the engineer at that time. No one fact or circumstance could be considered by it independently of the others which related to it.

It is often the case that after a transaction has occurred the most careful can discover that a different course of action might have prevented a calamity, or, at least, mitigated the injury. Still, when an emergency presents itself, and a per-

son is under great excitement from the presence of an impending peril, he may not act with that perfect judgment that he would under other and different circumstances and still not be negligent. "Railways are not liable for a mistaken exercise of judgment upon the part of their servants * * * to act with the utmost possible promptitude when the circumstances are such as to afford no time for deliberation." (Patterson's Railway Accident Law, p. 111.) Where an employee of a railroad company is confronted with a sudden emergency the failure on his part to exercise the best judgment the case renders possible does not establish lack of care and skill upon his part, which renders the company liable. ( *Wynn* v. *Cent. P., N. & E. R. R. R. Co.,* 133 N. Y. 575.) It is not responsible even for his error of judgment. (*Bittner* v. *Crosstown Rway. Co.,* 153 N. Y. 76 ; *Stabenau* v. *At. Ave. R. R. Co.,* 155 N. Y. 511.)

The charge was in direct conflict with the principle of these authorities. Under the instruction given the jury may have understood that negligence on the part of the defendant might be based upon the omission of the engineer to do any act which it at the time of the trial believed would have prevented the collision or lessened the injury, thus practically ignoring the situation at the time of the accident. The short period of time in which he was obliged to act, the impending danger to his train, to himself, to his passengers and to others, with the consequent excitement attending such a situation, the various acts required to stop or lessen the speed of the train, and all the other circumstances surrounding him at the time, should have been presented to the jury and considered by it before it could properly find the defendant negligent by reason of the acts of its engineer. By the portion of the charge under consideration the jury was permitted to find the defendant negligent without regard to these facts and circumstances, and to hold it liable for any mistaken exercise of judgment upon the part of the engineer. This charge cannot be upheld without disregarding many of the principles of the law of negligence which are thoroughly established by the decisions

of this court.    It was clearly erroneous, and requires a rever-
sal of the judgment from which this appeal is taken.

We might well leave the other questions in this case until
the necessity for their determination shall be subsequently
presented, except for the fact that there are many cases pend-
ing where the same questions are involved, one of which is of
quite general importance, and was the basis upon which this
appeal was allowed.

On the trial the defendant requested the court to charge:
" It is negligence as matter of law to drive on to a steam rail-
road track where the view is obstructed without stopping,
looking and listening.    The Court: I will not charge it in
those words.    Mr. Kelly: I except to your Honor's refusal to
charge as requested.    The Court: I will charge as follows:
It is negligence as matter of law to drive on to a steam rail-
road track where the view is obstructed without looking and
listening.    Mr. Kelly: I except to your Honor's refusal to
charge as requested.    The Court: I would say further that
whether it is the duty of the traveler to stop depends upon
the circumstances of the case, the surrounding conditions and
the nature of the vehicle which he is using.    I do not say, as
matter of law, it is his duty to stop every time; I say there
might be conditions under which he ought to stop in the
exercise of ordinary care.    Whether it was the duty of the
plaintiff here to have stopped is for the jury to say, under
all the circumstances surrounding this case, considering the
condition of the crossing, the obstructions, if any, its situation
and the surroundings and the nature of the vehicle which was
being used by him.    Gen. Tracy: And the defendant excepts
to your Honor's charge to that effect."    We find no error in
this charge, and think the defendant's exceptions were not
well taken.    This question has been recently before us, and
it was held that a person approaching a railroad crossing is
not required, as a matter of law, to stop before attempting to
cross the track, but his omission to do so is a fact for the con-
sideration of the jury.. (*Judson* v. *Central Vermont R. R.
Co.*, 158 N. Y. 597.)

The defendant likewise asked the court to charge that "No negligence can be imputed to the defendant by reason of the size or shape of the danger signal, or the language of the warning, or the length of the letters." This the court declined to charge, and the defendant excepted. It is obvious that, by this request, it sought an instruction to the effect that a disregard of the statute by it as to signboards across streets or highways at its crossings could not be made a basis of negligence. As we have already seen, the statute requires every railroad corporation to cause boards to be placed, supported and maintained across each public road or street, where the same is crossed by a railroad at grade. It also describes, in detail, their height, the manner in which they shall be constructed and maintained, the words which shall be painted thereon, the character of the letters employed, and their length and width. That the sign erected at the crossing where this accident occurred did not comply with the statute there is no doubt. It is equally clear that the one prescribed by the statute would be more readily seen and would more effectually notify an approaching traveler of the existence or situation of the railroad than the one used.

While the omission to comply with the statute in this respect might not constitute actionable negligence, where a person was injured who was familiar with the crossing, and had it in mind at the time, as in such a case the omission would not contribute to his injury, still, where one is injured who is not familiar with the crossing, but is a stranger, wholly ignorant of its existence or of the presence of any signboard, such an omission might constitute negligence which would justify a recovery. Although this precise question has not, to our knowledge, been passed upon by this court, yet, in discussing a somewhat similar question in *Palmer* v. *N. Y. C. & H. R. R. R. Co.* (112 N. Y. 234, 244), Judge DANFORTH said: "I do not think the court can say, as matter of law, that the statutes which require signals and precautions can be disregarded by the defendant, and it be allowed to claim that the traveler should not be influenced by these omissions." Again

he says : " Effect must be given to these wise regulations concerning measures to be adopted by a railroad company for the safety of the traveler." We think the same principle should be applied to the omission of a railroad company to comply with the statute requiring signboards at railroad crossings, where no such precaution is taken, or where it is obvious that the precaution provided by the company is less efficient than that required by the statute. We are of the opinion that proof of the omission of a railroad company to comply with this statute is admissible upon the question, and may constitute actionable negligence and justify a recovery where the injury was caused by a disregard of it. This conclusion is sustained by several text writers and by decisions in other jurisdictions where the question has arisen. (Thomas on Negligence, p. 409 ; Patterson's Railway Accident Law, p. 162 ; *Shaber* v. *St. P., M. & M. Rway. Co.*, 28 Minn. 103 ; *B. & O. R. R. Co.* v. *Whitacre*, 35 Ohio St. 627 ; *Elkins* v. *Boston & A. R. R. Co.*, 115 Mass. 190, 201 ; *Winstanley* v. *C., M. & St. P. R. Co.*, 72 Wis. 375, 380 ; *Heddles* v. *Chicago & N. W. R. Co.*, 77 Wis. 228, 232 ; *Haas* v. *Grand R. & I. R. R. Co.*, 47 Mich. 401.) It follows that the court properly refused to charge upon this subject as requested by the defendant.

The defendant also took the following exception to the main charge : " I except to your Honor's statement of the obligation on the part of the traveler, where you say to the jury that a traveler is bound to exercise ordinary care to avoid the happening of an accident at a steam railroad crossing. I except to that, and ask your Honor to charge the jury that a traveler is bound to use extraordinary care to avoid accidents at a steam railroad crossing and to use all his faculties to determine whether a train is approaching and to avoid it." The court declined to so charge because of the use of the work " extraordinary," and said that aside from that it charged as requested. " Mr. Kelly : Your Honor charges that it was the duty of the traveler to exercise all his faculties to avoid danger ? The court : Yes, I have done that already.

Gen. Tracy : We except to the refusal of your Honor to charge as requested, including the use of the word ' extraordinary.' " We find no error in this ruling.   The degree of care which a traveler must observe in approaching a railroad crossing has been recently under consideration by this court, and it was there held that a person approaching such a crossing is not bound to exercise the greatest diligence, but only such as a prudent man approaching such a place would ordinarily exercise under the circumstances.   (*Judson* v. *Cent. Vt. R. R. Co.*, 158 N. Y. 597.)

The only other question that need be specially considered arises upon the defendant's exception to the refusal of the court to charge that the relation of master and servant existed between the plaintiff and his associates and the driver and helper ; that the former were responsible for their competency, and that their negligence, if there was any, was imputable to the plaintiff and his associates.   In order to establish the liability of one person for an injury caused by the negligence of another, it is not enough to show that the latter was, at the time, acting under an employment by the former ; it must be shown in addition that the employment created the relation of master and servant.   (*Hexamer* v. *Webb*, 101 N. Y. 377 ; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 184 ; *Butler* v. *Townsend*, 126 N. Y. 105.)   In the latter case Judge Finch said that the relation of master and servant exists where the employer selects the workman, may remove or discharge him for misconduct, and may not only order what work shall be done but the manner and mode of performance.

The plaintiff in the case at bar did not hire or pay the driver or attendant, and had no voice in the selection of either, which was an important element in determining the relation between them.   The fact that the driver may have received from the plaintiff or his associates orders when to go forward and stop, did not make the plaintiff the servant of the defendant. (*Johnson* v. *N. A. S. N. Co.*, 132 N. Y. 576.)   No farther discussion of the question is necessary at this time, as we have recently had this subject under consideration.   (*Murray* v.

*Dwight,* 161 N. Y. 301.)    It is manifest that under the principles established by the decisions of this court the relation of master and servant did not exist between the plaintiff and the driver or helper, or either of them.

After carefully and studiously examining the great number of perplexing and difficult questions determined during the heat and excitement of a sharp and protracted trial, we can but admire and commend the scrupulous and intelligent care and ability evinced by the trial judge, and the almost unerring correctness of his rulings.    When the number and variety of the questions raised are considered, we are surprised, not that a single error was committed, but that there were not many more.

The judgment and order should be reversed and a new trial ordered, with costs to abide the event.

Parker, Ch. J., Gray, O'Brien, Bartlett, Haight and Vann, JJ., concur.

Judgment and order reversed, etc.