## Second Department, November, 1935.

MARGARET HOVELL, as Administratrix, etc., of EDGAR THOMAS HOVELL, Deceased, Respondent, v. VICTOR J. DOWLING and Another, as Receivers for the INTERBOROUGH RAPID TRANSIT COMPANY, Appellants.— Action to recover damages for the death of plaintiff's intestate, who was killed by a train of the railroad of which defendants are receivers. Appeal by defendants from a judgment in plaintiff's favor. Judgment reversed on the law and the facts and a new trial granted, costs to appellants to abide the event. We are of the opinion that the verdict is against the weight of the credible evidence and that the interests of justice require a new trial so there may be a clear submission of the issues of fact to another jury. Young, Carswell and Johnston, JJ., concur; Hagarty, J., with whom Davis, J., concurs, writes for reversal and dismissal of the complaint.

HAGARTY, J. (dissenting). The plaintiff's intestate fell to the north-bound tracks of the defendants' elevated railroad from the platform of the station at One Hundred and Seventy-fourth street and Third avenue, New York, at twelve-thirty o'clock on the morning of the 16th day of April, 1933. A train approaching from the south struck him, causing the injuries from which he died.

The only witness who testified to seeing the accident said that the decedent fell from the platform. In a statement made prior to the trial, this witness said that the decedent was in a drunken condition, and he admitted that he had told defendants' investigator that he was staggering on the platform. There is no claim that the fall was occasioned by any negligence on the part of the defendants.

Plaintiff, however, predicates liability upon the doctrine of " the last clear chance," claiming that the station agent, upon being apprised of the fall, did nothing and, further, that there were no lanterns at the station with which to signal and halt the approaching train.

The only testimony (by the only eyewitness) as to the alleged failure of the station agent to exercise reasonable care is this: " Q. Talk up loud, please, and tell us what you said to him and what he said to you. A. I merely ran down the stairs and asked the man if he had a lamp, that there was a man laying on the track and I wanted to, if possible, signal an incoming train, and the man did not really seem to know what I was talking about. He seemed more confused than I was at that time, and I was really pretty well confused. Mr. Cole: May I have that stricken out? The Court: I will have it read to you and see whether you want it or not. [Record read by the stenographer.] The Court: Do you want that stricken out? Read the first part of it again. [First part of answer read.] The Court: Strike it all out except that." Thus, while the testimony that both the witness and the station agent were confused was struck from the record, there remained the proof that the station agent " did not really seem to know what I was talking about." Lack of comprehension on the part of the station agent is not sufficient to charge the defendants with liability. In any event, not only does this testimony fail to show indifference on the part of the defendants' employee, but there is nothing to show that any action on his part, however prompt and energetic, would have prevented the accident.

Even if the station agent had understood the witness, but did not rise to the occasion and exercise good judgment in the heat of the sudden emergency, liability would not ensue. (*Lewis* v. *Long Island Railroad Co.*, 162 N. Y. 52, 62; *Woloszynowski* v. *N. Y. C. R. R. Co.*, 254 id. 206, 209.) The agent, in the absence of signal lanterns, could have done nothing more than did the witness Quinn, who testified that after his interview with the agent he ran upstairs and attempted to signal the oncoming train with his hat, but without success.

Negligence, therefore, if any, must be predicated solely on the failure of the defendants to provide signal lanterns. The defendants were under no obligation to anticipate negligence on the part of the decedent, resulting in his fall from the platform, and to provide means of rescuing him from the perilous position in which he placed himself. Their obligation, after notice and in the exercise of reasonable care, was to use such means as were available to prevent the accident, and nothing more. The element of antecedent lack of preparation, under such circumstances as the record here presents, is considered in the American Law Institute's Restatement of the Law of Torts (Vol. II, chap. 17, § 479, subd. f, p. 1256), viz.: " f. Antecedent lack of preparation. In order that the defendant may be liable under the rule stated in this Section, it is necessary that after he has discovered or should have discovered the plaintiff's peril he should have had the ability to avert the accident if he had used due care and competence in utilizing it. If the defendant, after discovering the plaintiff's peril, does all that can reasonably be expected of him, the fact that his efforts are defeated by antecedent lack of preparation or a previous course of negligent conduct is not sufficient to make him liable. All that is required of him is that he use carefully his then available ability."

I concur for reversal but vote to dismiss the complaint.

Davis, J., concurs with Hagarty, J.