SCOTT v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Second Department.   January 14, 1910.)

MASTER AND SERVANT (§ 149*)—INJURIES TO SERVANTS—SAFE PLACE TO WORK.
    A servant of many years' experience, engaged as a driller in excavating
    a tunnel, and whose duty it was to pry down loose rocks, found a crack
    in a rock, and, on calling defendant foreman's attention thereto, was told
    it would be all right to go ahead.  Held, that the foreman's statement
    was merely an expression of opinion that the stone would remain in
    place, and, plaintiff's knowledge being equal to that of the foreman, de-
    fendant was not negligent, so as to render it liable for injuries to plain-
    tiff through the falling of the stone.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 291;
    Dec. Dig. § 149.*]

Appeal from Trial Term, Westchester County.

Action by Thomas Scott against the Delaware, Lackawanna &
Western Railroad Company.   From a judgment for plaintiff, and
from an order denying a motion for a new trial, defendant appeals.
Reversed, and new trial granted.

Argued before WOODWARD, JENKS, BURR, THOMAS, and
RICH, JJ.

F. W. Thomson, for appellant.
Sydney A. Syme, for respondent.

WOODWARD, J.   The plaintiff, with others, was employed as
a driller to run a steam boring machine in excavating a tunnel for
railroad purposes through Bergen Hill, in Hoboken, N. J., and had
been thus employed for several weeks prior to the happening of the
accident for which he now seeks to recover damages for personal
injuries.   He had operated a drill of like kind for about 18 years, and
appears to have been a competent man.   The tunnel which he was
working in had proceeded into Bergen Hill about 600 feet at the time
of the accident.   The process of excavating is described in the evi-
dence.   They first sink a shaft or hole, known as the "heading."   Then
they start in to drill holes in the rock from the top, and put in "lifters,"
which consist of holes bored horizontally with the line of the tunnel.
When these are bored and charged with dynamite, they are exploded,
and the result is that a portion of rock is carried away by the explo-
sion and the muckers and shovelers clean off the spot, and this is
known as the "bench."   This is followed by the same process down
to the bottom of the tunnel, until the heading presents a series of
these benches, and thus the work is continued until completed.   This
particular tunnel was for a double-track railroad, and was about 31
feet high, and about the same width, with an arched top.   On the
night of the accident, at about 1 o'clock in the morning, while the
plaintiff with his assistants was engaged in setting his drilling ma-
chine for the purpose of boring the holes for the lower "bench," a
stone some five or six feet long and weighing a ton or more fell from
the bench above and struck the plaintiff's leg, throwing him down and
breaking the same, so that he was laid up for some time.   One George

Connelly was the foreman or boss of the drillers, and just previous to the accident the plaintiff had been employed in cleaning away the loose stone near the first bench, and he had observed that there was a crack in the same. He thereupon called the attention of Connelly to the crack, and, as this is the point where the defendant's negligence is supposed to be found, we will quote the plaintiff's own evidence. He says:

"The stone was on top of the bench. Before it fell it looked as though it was part of the bench. I saw this stone before it fell. There was quite a little bit of fine muck and dirt in front of it. We shoveled that all away, and got to the side of the bench; and I saw that there was a crack into it, a crack in the stone. When I saw that crack there, I told George Connelly there was a crack in there, and I didn't think it would stay up there."

Asked if he said anything more, the plaintiff continued:

"I told him there was a crack in it. I said: 'Will that be all right?' He said, 'Yes; all right.'"

After an objection, the witness continued:

"When I got the muck off and put the tripod down for to set up, I said, 'George, there is a crack in this. Do you think this place will be all right?' He said, 'Yes; go ahead, that will stand up, that will stay there.'"

The witness then continued:

"After a while, I put the tripod down and I spoke to him again concerning it. He said, 'Yes; go ahead, it is all right. That won't fall, Tom.'"

The plaintiff's theory, aside from the contention that he was not furnished a reasonably safe place in which to perform his labor, is that in acting under the orders of Connelly, the foreman, the plaintiff was justified in accepting the supposed superior knowledge of the boss, and that it was negligent for the foreman to tell him to go ahead. But clearly the foreman was not giving him any positive orders. He merely expressed an opinion that the stone would remain in place, and there is not a single fact or circumstance which would justify the jury in believing that the foreman had any greater knowledge, or any greater experience than the plaintiff, or that the latter had any reason to expect that he would be discharged if he disregarded the so-called order to go ahead, or that he had any assurance of safety, other than the mere opinion of the foreman that the rock would not fall. The evidence is undisputed that it was a part of the plaintiff's duty as a drill runner to go in after the firing of a blast and to pry out the loose rocks so that the place would be safe for the muckers or shovelers, and that iron bars were provided them for this purpose, and the plaintiff, who had worked as a drill runner for 18 years, and whose duty it was to use an iron bar in prying down the loose rocks, and who admits that he found the crack, and expressed a doubt as to whether the rock would remain in place, asks this court to support a judgment that the defendant was guilty of negligence because its foreman expressed an opinion to the contrary and said in a general way to go ahead. The order was not to go ahead and do any particular thing, as to which there was an undisclosed danger, but a general order to go ahead with the work, and a part of the plain-

tiff's work was to inspect the place, to pry out with an iron bar the loosened rock. He knew the danger just as well as the foreman. He probably knew it better, for it was he who discovered the crack and called the foreman's attention to it; and if he chose to refrain from the use of the iron bar in making a test of the condition of the rock, and to rely upon the judgment of the foreman, that is surely not negligence of any duty which the master owed to him. Mere error of judgment on the part of the foreman is not negligence, certainly not in the present case, where the plaintiff knew and appreciated the danger, and yet neglected to use the appliances—the suitable and proper appliances for such work, which the master had furnished him—in determining the true state of affairs. This was not the case of a new employment. The plaintiff had been at work upon this particular job for several weeks, and helped to create the very condition which brought about the accident. He did not require warning of the danger, for he knew that the blast had been fired, knew that the work was inherently dangerous, and he had actually discovered in his work of inspection that this particular rock was loose; that there was a crack, but instead of taking an iron bar provided for this purpose, and prying it out, or at least determining that it could not be pried out, he elected to talk with the foreman about it, and to accept his opinion that it would not fall, without any reason, so far as the evidence shows, for believing that the foreman had any better information, or any larger experience, to base this judgment upon than the plaintiff. To call this negligence of the duty of a master, and to permit a recovery in such a case, is to disregard all reason and all justice, and it will not be countenanced here.

What has already been said practically disposes of the question of the duty of the master in furnishing a reasonably safe place for the plaintiff to work in. The case of Simone v. Kirk, 173 N. Y. 7, 65 N. E. 739, does not afford any ground for the plaintiff's contention on this score, for in that case the plaintiff had been put to work after the place had been changed by the work of others, and the court say:

"When a new servant was hired by the defendants, new duties were cast upon them with reference to him,. for they were bound to furnish him a safe place to work when they set him at work. * * * He was not a fellow servant of Simone when the danger was created, for the latter was not then a servant of the defendants, and he did not become a fellow servant until after the foreman had hired him and set him to work. As to Simone, at least, it was not enough that the place was safe some weeks before when other men were hired and put at work there, for reasonable care was due from the defendants to provide a safe place for the new servant to work in and to warn him of the danger he was liable to encounter."

But that is not the case here. The plaintiff had been employed for weeks. He helped to create the very condition which existed, and he actually knew of the crack in the rock, and he had the proper implements, and it was his duty, to pry down loose rocks, but he preferred to debate the question with his foreman and to act upon the latter's judgment rather than perform his duty. The fact that the rock fell without any apparent cause shows conclusively that a very slight amount of prying with an iron bar would have brought down the rock in safety, and thus the plaintiff would have had no cause

to complain. We are of opinion that upon the question of a safe place to work the rule recognized and adopted by this court in King v. Ford, 121 App. Div. 404, 106 N. Y. Supp. 50, is the one which should prevail here, and this makes it certain that the judgment cannot be sustained.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.

