it did not operate as an adjudication in favor of the defendant upon the questions litigated in that action.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, P. J., and KELLOGG, J., dissenting.

---

## SCOTT v. DELAWARE, L. & W. R. CO.

(Supreme Court. Appellate Division, Second Department.   January 12, 1912.)

1. MASTER AND SERVANT (§ 173*)—INJURY TO SERVANT—NEGLIGENCE.
   Where a master by its general superintendent knew that one set of servants had so negligently done their work as to occasion danger to a fellow servant, it was his duty to take reasonable measures to remove the danger, or he would be liable for injuries to the fellow servant.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 343–346; Dec. Dig. § 173.*]

2. MASTER AND SERVANT (§ 149*)—INJURY TO SERVANT—LIABILITY.
   An operator of a steam drill with 24 years' experience as a driller was injured while working in solid rock by the fall of a loosened piece of rock. He observed the condition prior to the accident, and the foreman, when informed thereof, stated that it was all right and to go ahead, but did not assure the operator that the place was safe. The operator had as good an opportunity as the foreman to know of the danger. *Held*, that the statement of the foreman was a declaration of opinion which the operator might accept or reject, and the master was not liable for the injury sustained by the operator while going on with his work.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 149.*]

3. MASTER AND SERVANT (§ 124*)—OBLIGATION OF MASTER—INSPECTION.
   An inspection of the place of work by a competent foreman is not a guaranty of the judgment of the foreman deeming the place safe, and the master does not absolutely insure against errors in judgment of competent employés, and he is not liable for injuries merely because of an error in judgment of the foreman.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

4. MASTER AND SERVANT (§ 199*)—FELLOW SERVANTS—WHO ARE.,
   Where it was the duty of the day gang engaged in tunnel work to drag down loose rocks and clear up the débris, any negligence in the performance of such work resulting in injury to a member of another gang was that of fellow servants.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 491: Dec. Dig. § 199.*]

5. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—SAFE PLACE IN WHICH TO WORK.
   Where the place afforded an experienced operator of a steam drill engaged in excavating a tunnel was constantly changing in the progress of the work, the question of a safe place in which to work was not involved in an action by the operator for injuries caused by the fall of a loosened piece of rock.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

· 6. MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—NEGLIGENCE.

A master may intrust a competent foreman with the details of the work, and the fact that the foreman erred in judgment in respect to the danger to be apprehended from a condition known equally to the servant is not evidence of negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 190.*]

Appeal from Trial Term, Westchester County.

Action by Thomas Scott against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plaintiff, and from an order denying a motion to set aside the verdict and for new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

F. W. Thomson, for appellant.
Sydney A. Syme, for respondent.

WOODWARD, J. The evidence in the present instance is not materially different from that presented by the record in a former appeal (Scott v. D. L. & W. R. Co., 136 App. Div. 347, 120 N. Y. Supp. 895), though there is an evident effort to meet some of the points suggested in the opinion of this court in reversing the judgment, and it is not seriously questioned, as we understand it, that the same result should follow in this case, except that it is urged that the Court of Appeals has held a different doctrine in the case of Henry v. Hudson & Manhattan R. Co., 201 N. Y. 140, 94 N. E. 623, which would, of course, be controlling here. In the Henry Case, supra, it was conceded that the judgment of nonsuit would have been proper in so far as the evidence merely disclosed that the work under way had produced the place in which the work was being performed, and that the blasters, who were fellow servants, had failed to clear up the dangerous loose stones, but it was held that because the evidence disclosed that on the day previous to the accident the defendant's general superintendent had been told by a workman that the rocks at the head of the tunnel were dangerous and likely to fall, and that this general superintendent had admitted that they did look pretty dangerous, and that he would have them removed by nightfall, a different question was presented, and one which it was the duty of the court to submit to the jury.

[1] In that case the loose stones were not removed, and there was no evidence that the defendant's general superintendent had taken any precautions to prevent the danger which he had conceded to have been apparent, and the court very properly held that when the defendant, by its general superintendent, knew that one set of servants had so negligently done their work as to occasion danger to a fellow servant, it is his duty to interpose and take reasonable measures to see that the rules are complied with, the work properly done, and the danger removed—citing O'Brien v. Buffalo Furnace Co., 183 N. Y. 317, 76 N. E. 161, a case where the defendant's general manager, admitting that

he knew the danger of tamping dynamite with a steel rod, permitted a foreman to use such a rod in tamping dynamite in a pipe, the resulting explosion killing plaintiff's intestate, who was working with the foreman. There can be no question of the propriety of the rule stated in the cases cited, but no such state of facts exists in the case now before us. It is true that there is some testimony to the effect that one of the workmen engaged in the construction of the tunnel through Bergen Hill, where the plaintiff was injured, called the attention of the defendant's foreman to the fact that there was apparently a dangerous rock left after the blast of the previous day just before midnight, that the plaintiff had some conversation with this same foreman about a crack in the rock just before the accident happened, and that the foreman told him that it was all right and to go ahead, but it is very apparent from the testimony that the foreman did not admit that the situation was dangerous, and that he did not give any assurances to the plaintiff that the condition, which was known to him, would be changed.

[2] The plaintiff had had 24 years of experience as a driller in tunnel work. The work was being carried on in solid rock, and all of the conditions were as well known to the plaintiff as to the defendant's foreman, and there is nothing in the evidence from which the fair inference may be drawn that the plaintiff was acting under any coercive orders of the defendant. As was said in the case of O'Brien v. Buffalo Furnace Co., supra, the "statements of the foreman and the superintendent that there was no danger seem no more than declarations of opinion on their part which the deceased might accept or reject as he deemed wise," and that is certainly as far as the testimony in this case goes. The plaintiff suggested that there was danger of the rock falling. He had as good an opportunity to know and judge of this danger as the foreman, and after a conversation with the latter, in which the latter merely expressed the opinion that the rock would not fall, the plaintiff went on with his work as directed. There is not a particle of evidence from which the inference could be properly drawn that the plaintiff was forbidden to make any further investigations, or that he was deprived of any means to ascertain the extent of the danger to which he was exposed. Counsel attempts to carry the impression that the plaintiff was urged to hurry up the work, but a reading of the testimony to which reference is made only goes to show that the foreman suggested that he wanted to get the work progressed so that it would be ready for those who were to come along on the following day, and there is nothing to show that the plaintiff was in any manner hindered from taking any and every precaution which the situation should have suggested to a man of his long experience in the same line of work. There is some testimony, to be sure, to the effect that the steam shovel was used to dig out projecting rocks of large size, and that the foreman alone had authority to direct the action of this steam shovel, but there is absolutely no evidence that the steam shovel had not been employed in fitting the place after the blast, or that all proper effort had not been made to clean up the shattered rock. The most that can be said from the evidence is that there was a crack

in the rock, that it was not wholly severed from its connection with the solid rock in which the work was being carried forward, and that the defendant's foreman, whose general competency is not questioned, expressed the opinion that the rock would not fall. There is no evidence that the foreman was better qualified to judge of the situation than the plaintiff, no evidence that the plaintiff was under any compulsion to go to work, or that he had any assurance on the part of the defendant's foreman that the situation would be changed. There was no failure of inspection, if it be conceded that inspection was one of the duties which the defendant owed.

[3] There was an inspection by the foreman, whose competency is not in issue, and the foreman reached the conclusion that the rock would not fall, and the plaintiff, with an equal right to determine this question, seems to have agreed with him. Inspection does not amount to a guaranty of the judgment of the inspector. The master does not absolutely insure against errors in judgment of competent employés, and, unless such a rule is to be adopted, the plaintiff has failed to make out a case.

[4] Under the evidence in this case, it was the duty of the day gang to drag down loose rocks and to clear up the débris, and any negligence in the performance of this part of the work was clearly that of fellow servants. Henry v. Hudson & Manhattan R. R. Co., 201 N. Y. 140, 142, 94 N. E. 623.

[5] Work had progressed for at least five or six hours after the day gang had departed. The plaintiff and others had been using steam drills on the ledge from which this rock fell, and the place afforded the plaintiff to perform his work was constantly undergoing changes in the progress of the undertaking, so that the question of a safe place in which to work is not involved in this case. Henry v. Hudson & Manhattan R. R. Co., supra.

[6] The master clearly had a right to intrust a competent foreman with the details of this work, and the fact that this foreman may have erred in judgment in respect to the danger to be apprehended from a condition known equally to the plaintiff is not evidence of negligence on the part of the defendant, and the case of Henry v. Hudson & Manhattan R. R. Co., supra, is not an authority for the submission of this case to the jury.

The rule of law applying to this case is to be found in King v. Ford, 121 App. Div. 404, 106 N. Y. Supp. 50, and in the opinion of this court on the former appeal, and is clearly to be distinguished from the case relied upon by the respondent, in that in the Henry Case, supra, the general superintendent of the defendant had his attention called to the situation and admitted that it looked dangerous, and promised to have the same remedied before nightfall. The plaintiff in that case went to work on the following day, without notice of the dangerous condition which had been produced by another class of servants, and which danger was known to the defendant's general superintendent, who had promised to remedy the defect. The negligence in that case consisted of the failure on the part of the defendant to compel one class of serv-

ants to properly perform their work, when failure to so perform the work, resulting in a concededly dangerous condition, was known to the defendant. Here the defendant's foreman, acting in entire good faith and in the exercise of his best judgment, so far as the evidence discloses, had no reason to believe that there had been any failure in the performance of the duties of the day gang. He looked at the crack called to his attention by the plaintiff, and reached the conclusion that it was not dangerous. The plaintiff under no compulsion appears to have accepted that judgment, although he had had long experience in that line of work, and it is difficult to understand how the defendant could be held to be negligent in the matter without the plaintiff being equally negligent. He knew all that the foreman knew. The defendant had concededly furnished all of the tools and appliances necessary to the proper performance of the work, and there is not a suggestion that the foreman refused to do anything or that he refused to permit the plaintiff to do anything which might have been necessary to determine the question of safety. It is probably true that, if the defendant's foreman had brought the steam shovel to the spot and made use of it, this particular accident might have been averted, but the question is whether the defendant, having furnished the steam shovel, a competent foreman, competent help, and other tools and appliances, is responsible for the failure of its foreman to do this act. Obviously it is not liable for this failure, because it owed no duty to warrant the judgment of · its foreman, who might lawfully be intrusted with the details of this work, and this is certainly true in this case where the plaintiff had been engaged right along in this work and was a man of large experience, and it does not appear that he made any request for the foreman to make use of the steam shovel or of any of the other appliances or tools which the defendant had concededly furnished. Unless we are to hold that the defendant is an insurer, there is no foundation for this judgment and it should be reversed.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event. All concur.

