Joseph Maguire, Appellant, *v.* William M. Barrett,
as President of the Adams Express Company,
Respondent.

**Master and servant — negligence — injury to workman by
fall of heavy casting — error of superintendent in charge in
deciding that casting would not fall — whether superintendent
in forming such opinion exercised reasonable care and super-
vision question of fact for jury.**

1. The judgment of a superintendent or foreman cannot be sub-
stituted for the rule of the reasonably prudent man by which all acts
in negligence law are measured.

2. The plaintiff was in the defendant's employ as the driver of one
of its wagons and was injured on a delivery platform at one of its
stations. This platform was used by the defendant for receiving and
sorting freight. The various pieces of freight were placed on this
platform by the drivers and helpers of the express company and by
outside truckmen and shippers. After the plaintiff had finished
unloading his wagon and was going to register his time at the time
booth, he was injured by a heavy iron casting falling over upon
him. This casting was about three feet six inches high, six inches
thick, a foot and a half wide, and weighed about six hundred pounds.
It had been left leaning almost perpendicular or upright against one
of the iron pillars of the platform and not more than three feet from
where the plaintiff had unloaded his wagon. Taking the evidence
most favorable to the plaintiff, the bottom of this iron casting was
about two inches from the foot of the pillar against which it was
leaning. The attention of the foreman was called to the danger
before the accident. The negligence, if any, rests in the knowledge
of the foreman that this heavy iron was so placed as to be dangerous
and liable to topple over, and his failure to remedy the condition.
*Held*, that these facts presented a question for the jury to pass upon,
the question being whether under such circumstances the foreman
exercised the care and supervision which a reasonably prudent man
charged with similar duties would have used. (*Loftus* v. *Union Ferry
Co. of Brooklyn*, 84 N. Y. 455; *Citrone* v. *O Rourke Engineering
Construction Co.*, 188 N. Y. 339; *Scott* v. *D., L. & W. R. R. Co.*,
148 App. Div. 697, distinguished.)

*Maguire* v. *Barrett*, 168 App. Div. 836, reversed.

(Submitted February 4, 1918; decided February 26, 1918.)

4

APPEAL from a judgment, entered August 6, 1915, upon an order of the Appellate Division of the Supreme Court in the first judicial department reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Robert J. Culhane* for appellant. The foreman should have adopted some precaution by removing the piece of iron to a place of safety or laying it down. When the master directs the performance of work by his servant at a place which may become dangerous, and which danger may be foreseen and guarded against by the exercise of reasonable care, it is the master's duty to exercise such care and adopt such precautions as will protect the servant. (*McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Corcoran* v. *Holbrook*, 59 N. Y. 517.) Whether or not the plaintiff assumed the risk of the danger resulting in his injuries is a question of fact for the jury. (*Pepe* v. *Utica Pipe Foundry Co.*, 132 App. Div. 462; *Pelow* v. *Oswego Const. Co.*, 162 App. Div. 841; *Griffith* v. *Amer. Bridge Co.*, 163 App. Div. 599.)

*Edward V. Conwell* for respondent. There was no proof that the express company or its foreman was guilty of any negligence or neglect of duty. (*Maul* v. *Erie R. R. Co.*, 198 N. Y. 221; *Scott* v. *D., L. & W. R. R. Co.*, 136 App. Div. 347; 148 App. Div. 697; *Mattson* v. *Phœnix Construction Co.*, 135 App. Div. 234; *Fresusk* v. *Pittsburgh Contracting Co.*, 159 App. Div. 356, 358; *Mullin* v. *Genesee Co. El. L., P. & Gas Co.*, 202 N. Y. 275; *Citrone* v. *O'Rourke Engineering Constr. Co.*, 188 N. Y. 339; *Kearney* v. *Hanlien*, 149 App. Div. 524; *La Marca* v. *Atlantic Stevedoring Co.*, 164 App. Div. 490; *Fogarty* v. *New York Dock Co.*, 157 App. Div. 924.)

CRANE, J. If there be evidence in this case creating a question of fact for the jury, the Appellate Division was in error in dismissing the complaint. In our opinion, there is such a question of fact.

The plaintiff was in the defendant's employ as the driver of one of its wagons and was injured on the evening of February 25, 1913, on the delivery platform at Lexington avenue and Forty-ninth street, Manhattan, New York. This platform was used by the defendant for receiving and sorting freight. It was inclosed and ran from Forty-ninth to Fiftieth street, one hundred feet or more, being part of the new Grand Central Terminal. The structure was of concrete and iron, supported by iron pillars which ran through the concrete platform. The various pieces of freight were placed on this platform by the drivers and helpers of the express company and by outside truckmen and shippers. This freight was being constantly moved about from one place to another, sorted and put on trucks, and taken by the elevators to the train level for shipment.

After the plaintiff had finished unloading his wagon and was going to register his time at the time booth, he was injured by a heavy iron casting falling over upon him. This casting was about three feet six inches high, six inches thick, a foot and a half wide, and weighed about six hundred pounds. It had been left leaning almost perpendicular or upright against one of the iron pillars of the platform and not more than three feet from where the plaintiff had unloaded his wagon. Taking the evidence most favorable to the plaintiff, as we must do (*Eastland* v. *Clarke*, 165 N. Y. 420), the bottom of this iron casting was about two inches from the foot of the pillar against which it was leaning.

No negligence can be predicated upon the placing of this casting for no one knows who placed it in this position, and no liability arises from the happening itself. The

negligence, if any, rests in the knowledge of the foreman that this heavy iron was so placed as to be dangerous and liable to topple over, and his failure to remedy the condition.

Foremen were in charge of this platform. John Hart and Dan Hart were such foremen on the evening in question and had charge of the south end and middle of the platform. These foremen directed the drivers where to place their freight and instructed other employees on the platform how to dispose of it after it was unloaded. Louis Neal, a driver, testified that he had noticed this iron standing alongside of the pillar as he was unloading his wagon at the platform a half hour before the accident. Pointing to a man in the court room, who was Dan Hart, he said: " I spoke to the foreman there when I was backing in with my van that it was dangerous."

This action was brought under the Employers' Liability Act which makes the defendant liable for the negligence of the foreman.

In brief, we have this evidence: The defendant maintained a large platform to which its drivers brought freight for shipment. Foremen in charge of the platform gave instructions where and how to place it, and when and how to remove it. Employees, under the control of these foremen, were moving about constantly on this platform. An iron casting, weighing about six hundred pounds, was placed upright alongside a column so far off the angle as to indicate the possibility and likelihood of its falling over. The foreman's attention was called to the danger. He paid no attention and did nothing. One-half hour thereafter, without intervening cause, the iron toppled over on an employee going about his usual work.

Can it be said as matter of law that this foreman exercised the reasonable care which the circumstances called for? The Appellate Division has answered in the

affirmative. We think, however, that these facts presented a question for the jury to pass upon, the question being whether under such circumstances the foreman exercised the care and supervision which a reasonably prudent man charged with similar duties would have used. "If it is necessary to determine, as in most cases it is, what a man of ordinary care and prudence would be likely to do under the circumstances proven, this, involving as it generally must, more or less conjecture, can only be settled by a jury." (*Eastland* v. *Clarke*, 165 N. Y. 420, 426.) "While it is true that the master is not liable to one servant for the negligence of another when he conducts the work in a proper manner and prescribes proper rules for its performance, yet when he knows that one set of servants have so negligently done their work as to occasion danger to a fellow-servant, it is his duty to interpose and take reasonable means to see that the rules are complied with, the work properly done and the danger removed." (*Henry* v. *Hudson & M. R. R. Co.*, 201 N. Y. 140, 142.) It is the duty of the master to use reasonable care to so conduct his business as not to subject servants to unnecessary danger in the prosecution of their work. (*O'Brien* v. *Buffalo Furnace Co.*, 183 N. Y. 317, 321.) The negligence of the foreman, Dan Hart, in this case would be the negligence of the defendant. (*Famborille* v. *Atlantic, Gulf & Pacific Co.*, 155 App. Div. 833; affd., 213 N. Y. 666.)

That a reasonably careful foreman, considering the use of this platform by so many workmen and the lifting and moving of so many packages, would have heeded the notice given by Neal and have removed the iron or pulled it out further at the base and thus prevented an accident, would not be an unwarranted or unreasonable conclusion. The evidence at least submits to this inference, and where the circumstances are such that men of ordinary prudence and discretion might differ

as to the character of the acts, the question of negligence is generally for the jury. (*Rounds* v. *D., L. & W. R. R. Co.,* 64 N. Y. 129; *Sharp* v. *Erie R. R. Co.,* 184 N. Y. 100, 104.)

In the opinion below it was said: "If it be assumed that the attention of the foreman was, prior to the accident, called to the dangerous position of the casting, this does not aid the plaintiff, because the foreman considered it safe, and at most it was an error of judgment upon his part, for which the defendant is not responsible." The phrase "error of judgment," appearing in some of the cases, has been used, as the facts will show, to indicate that there was no negligence in failing to do what reasonably prudent men would have done under similar circumstances. The judgment, however, of a superintendent or foreman cannot be substituted for the rule of the reasonably prudent man by which all acts in negligence law are measured. As stated by Judge POUND, in *Mertz* v. *Connecticut Co.* (217 N. Y. 475, 477): "Negligence must be determined upon the facts as they would appear to the typical prudent and competent man and not upon the personal judgment of the man concerned. The question was not whether *this* motorman was convinced that he could pass the automobile in safety, but whether the prudent and competent motorman, acting prudently, would have been so convinced." Or as stated in *Hoyt* v. *N. Y., L. E. & W. R. R. Co.* (118 N. Y. 399, 406): "The judgment that is required to be exercised is the judgment of a man of ordinary and common prudence. The judgment of an imbecile or idiot will not suffice unless such judgment accords with the standard above indicated."

So, in this case, it is not a sufficient answer to say that the foreman looked at the casting and thought it safe, if, to the reasonably prudent man, it would have appeared dangerous.

There must be no confusion between the use of the words " error of judgment " in certain cases to indicate that there was no failure of reasonable care, and the " error of judgment " which excuses what might otherwise be a negligent act. Where an employee is confronted with a sudden emergency, the failure on his part to exercise the best judgment does not render the master liable. (*Lewis* v. *L. I. R. R. Co.*, 162 N. Y. 52, 62.) For an error of judgment in an emergency where two courses are open to the employee, the master is not liable. (*Stabenau* v. *Atlantic Ave. R. R. Co.*, 155 N. Y. 511, 515; *Bittner* v. *Crosstown Street Ry. Co.*, 153 N. Y. 76, 82; *Wynn* v. *Cent. Park, N. & E. R. R. R. Co.*, 133 N. Y. 575, 577; *McClain* v. *Brooklyn City R. R. Co.*, 116 N. Y. 459, 470.)

This case at bar does not come within the rule established in *Loftus* v. *Union Ferry Co. of Brooklyn* (84 N. Y. 455) and followed in *Maue* v. *Erie R. R. Co.* (198 N. Y. 221). In those cases the injury was occasioned through what proved to be, by the accident, dangerous construction, but the use, through many years, of the structures in like condition gave no indication to prudent persons that such injuries could be received. In the *Loftus* case it was said: " That it was possible for a child or even a man to get through the opening was apparent enough. But that this was likely to occur was negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty." (p. 460.) And in the *Maue* case we find it stated: " If the defendant, in the exercise of reasonable care and foresight, had been chargeable with knowledge that this opening in its tracks might prove to be a menace to the safety of its employees, the plaintiff could sustain the judgment herein. But that is just where his evidence fails." (p. 227.) These cases would be applicable if the iron casting had stood at the same angle against the pillar

for weeks or months so that there would be no suggestion to a prudent foreman that it was likely to fall.

Neither is the rule enforced in *Citrone* v. *O'Rourke Engineering Construction Co.* (188 N. Y. 339) and *Scott* v. *D., L. & W. R. R. Co.* (148 App. Div. 697) a bar to the plaintiff's cause, as the danger here did not arise because the work itself made the place unsafe and dangerous.

Feeling, as we do, that the evidence in this case presented a question of fact as to the foreman's negligence which should have been submitted to the jury, we are obliged to reverse the judgment of the Appellate Division, but cannot reinstate the verdict as requested. The order of the Appellate Division not only dismisses the complaint but reverses the finding of fact based upon the defendant's negligence. Within the practice laid down in *Meisle* v. *N. Y. C. & H. R. R. R. Co.* (219 N. Y. 317, 322) a new trial must be granted.

The judgment of the Appellate Division should be reversed and new trial granted, costs to abide the event.

Hiscock, Ch. J., Collin, Cuddeback, Cardozo, Pound and Andrews, JJ., concur.

Judgment reversed, etc.