EINO J. KOISTINEN, Plaintiff, *v.* AMERICAN EXPORT LINES, INC., Defendant.

City Court of the City of New York, Trial Term, New York County, May 26, 1948.

*William L. Standard* and *Louis R. Harolds* for plaintiff.

*John Osnato, Jr.,* for defendant.

CARLIN, J. The plaintiff, a seaman, rated as a fireman and watertender, on the S. S. *John N. Robins,* was injured while on shore leave in the port of Split, Yugoslavia, on February 3, 1946; he went ashore about noon; in the exercise of a seaman's wonted privilege he resorted to a tavern where he drank one glass of wine like to our familiar port; thereafter in the course of a walk about town he visited another liquid dispensary where he quaffed two glasses of a similar vintage; there he met a woman whose blandishments, prevailing over his better sense, lured him to her room for purposes not particularly platonic; while there " consideration like an angel came and whipped the offending Adam out of him "; the woman scorned was unappeased by his contrition and vociferously remonstrated unless her unregarded charms were requited by an accretion of " dinner " (phonetically put); the court erroneously interpreted the word as showing that the woman had a carnivorous frenzy which could only be soothed by the succulent sirloin provided at the plaintiff's expense; but it was explained to denote a pecuniary not a gastronomic dun; she then essayed to relieve his pockets of their monetary content but without the success of the Lady that's known as Lou in Service's Spell of the Yukon where the man from the creeks, unlike plaintiff, was not on his toes to repel the peculation; completely thwarted the woman locked plaintiff in her room whereupon he proceeded to kick the door while he

clamored for exit; not thus persuasive, he went to the window which was about six to eight feet above the ground and while there contemplating departure he was quickened to resolution by the sudden appearance of a man who formidably loomed at the lintels; thus, tossed between the horns of a most dire dilemma, to wit, the man in the doorway and the window, the plaintiff, eyeing the one with the duller point, elected the latter means of egress undoubtedly at the time laboring under the supposition that he was about to be as roughly used as the other man in a badger game; parenthetically it may be observed that it is a matter of speculation for contemporary commentators as well as for discussion by the delegates to United Nations how the refinements of that pastime came to penetrate the ferruginous arras of Yugoslavia especially as the diversion is reputed to be of strictly capitalistic American origin. So the plaintiff thus confronted leaped from the window and sustained injuries which hospitalized him in Yugoslavia and the United States; during the extensive period of his incapacitation his wages and hospital bills were paid by defendant; the only question confronting the court is his claim for maintenance over a period of thirty-six days. The defendant resists the claim on the foregoing facts contending that it is founded in immorality; it further defends against the claim on the ground that during all the times involved in this action the United States and not the defendant was the owner of the ship and, therefore, was exclusively liable in the event plaintiff had a claim. It appears that defendant managed and operated the ship under the usual general agency agreement with the Government; it further appears that plaintiff, when he signed the shipping articles and subsequently, neither knew nor was told that he was working for the United States; the only intimation of defendant's general agency agreement with the Government was contained on the front page of the shipping articles which was not displayed nor explained to the plaintiff when he signed as a crew member; according to the testimony of the master a facsimile of the front page of the articles was posted on the bulletin board in the crew's mess; this plaintiff denies; presupposing that such was the fact it is hard to conceive how such publication would have been enlightening to plaintiff who testified he could neither read nor write English; the difficulty in following his testimony given in broken English without the aid of an interpreter corroborated his ignorance of our language; so that presupposing that the record of the Government's ownership was posted on the bulletin board it could hardly come to the

knowledge of plaintiff unless he was actually so informed; the master on his testimony established that he neither read nor was asked to read to plaintiff the shipping articles and that he did not reveal to plaintiff that, as a member of the crew, he was an employee of the United States; the master further testified that the crew was procured from the maritime union in New York which supplied seamen on defendant's call; that defendant paid the crew; that any disputes regarding its wages were taken up by the master with the representative of the union who in turn would discuss it with defendant; that all the ship's business was reported by the master to the defendant. Without presently passing upon whether the circumstances under which plaintiff met with his injuries entitle him to recover maintenance, suffice it to observe that the defendant cannot defeat the right to recovery merely by establishing that it managed and operated the ship under a general agency agreement with the Government as owner (*Hust* v. *Moore-McCormack Lines,* 328 U. S. 707; *Lewis* v. *United States Navigation Co.,* 57 F. Supp. 652; *The Anna Howard Shaw,* 75 F. Supp. 210; *Healey* v. *Sprague S. S. Co.,* 191 Misc. 164); as appears from the facts of the instant case the plaintiff was not apprised of defendant's status as agent for the Government, as principal, therefore, plaintiff without knowledge or disclosure of the agency agreement cannot be deprived thereby of his rights as a seaman against the defendant, as agent of an undisclosed principal. (*Horan* v. *Hughes,* 129 F. 248, affd. 129 F. 1005; *Brady* v. *Roosevelt S. S. Co.,* 317 U. S. 575; *Lewis* v. *United States Navigation Co., supra*; *Yancey* v. *United States,* 1948 A. M. C. 317.) From the foregoing authorities the court concludes that defendant may not defeat plaintiff's cause of action merely on the ground that it was not the owner of the ship. This brings us to a consideration of the peculiar circumstances under which plaintiff met with his injuries; do they militate against the recovery of maintenance from the defendant? No authority with an analogous state of facts was cited by either side; the defendant contends that as the plaintiff did not accompany the woman to her room for heavenly contemplation his leap from the window was tainted with his original immoral intent and, therefore, he is not entitled to sue for maintenance. While it is true that there was a gross degree of culpability in the original purpose of the plaintiff for which he went to the woman's room it cannot be consistently argued that plaintiff, having abandoned that purpose before consummation and having sought to conserve his safety as well as the life of a good sailor, was acting in con-

tinuance of the initial immoral intent; in the court's opinion the proximate cause of plaintiff's leap from the window was not his original intent but was the concurrence of the locked door from which he sought egress and the subsequent looming threat of the man with the menacing mien; the expedition of plaintiff's violent fear outran the pauser, reason, causing him in the exercise of an erroneous judgment to jump rather than drop to the ground which undoubtedly would have been a safer means in view of the comparatively short space he had to negotiate for escape. Under the circumstances the window was the only solution presented to plaintiff in his emergency; at least he cannot be condemned for so conjecturing despite his starting on the wrong moral foot in the first instance; again the ticklish situation which confronted plaintiff immediately before his leap was not a reasonably fore-seeable consequence of his original intention. It may be argued that the foregoing pronouncement is obiter dicta but the court holds that it is consistent with the law enunciated by more respectable authority; as heretofore intimated, no case cited in the briefs of either side squares analogously in its facts with those presented to the court in this case; though of novel impression it does not fall without well-defined principles found in the decisions. In *Ellis* v. *American Hawaiian S. S. Co.* (165 F. 2d 999) a seaman on shore leave was not found to be definitely intoxicated from the consumption of three bottles of beer and his diving into a swimming pool was not construed as willful or gross misconduct; nor does the court find in the present case that the drinking of three glasses of wine rendered plaintiff intoxicated; nor did his jump from the window denote inebriation; to hold otherwise would argue strongly against his ability to choose the means of escape and would indict him for an error of judgment which is not the law against one who chooses in an emergency one means of safety when another might have been more conducive to that end. (See *Maguire* v. *Barrett,* 223 N. Y. 49, 55; *Lewis* v. *Long Island R. R. Co.,* 162 N. Y. 52, 62; *Laidlaw* v. *Sage,* 158 N. Y. 73, 89–90.) Peculiarly the plaintiff chose the only means of escape even though it resulted in his injuries; had he elected to go out the door with the threatening man, there barring the way, his injuries reasonably might have been more dire and serious than those sustained by his jump from the window; at least he is still alive. In *The Anna Howard Shaw* case (*supra*) the seaman was held to be entitled to maintenance unless his injury resulted from some willful misbehavior or deliberate act of indiscretion; gross negligence according to the rule of this case would deprive

the seaman of maintenance. As appears from the foregoing it may be argued that plaintiff's immoral indiscretion first put him in the woman's room but it did not impel him to jump from the window; that was occasioned by the barred door with the man thereat menacingly looming; nor did *The Anna Howard Shaw* case hold that the seaman on shore leave was so intoxicated as to constitute willful misbehavior prejudicial to his right to maintenance and cure. Quoting from *The Anna Howard Shaw* case at page 213 which cited *Aguilar* v. *Standard Oil Co. of N. J.* (318 U. S. 724) it is said " A seaman, injured in the service of his ship, is entitled to maintenance at its expense. * * * ' Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive ' him of maintenance, the ' traditional instances ' being ' venereal disease and injuries received as a result of intoxication.' " (See, also, *Nowery* v. *Smith,* 69 F. Supp. 755, affd. 161 F. 2d 732; *Moss* v. *Alaska Packers Assn.,* 70 Cal. App. 2d 857.) In *Boulton* v. *Moore* (14 F. 922, 926) the court said regarding seaman " As ' wards ' of the court, they are treated with the tenderness of a guardian " and consistent with that principle is the decision in *Aguilar* v. *Standard Oil Co. of N. J.* (318 U. S. 724, *supra*); in holding that the shipowner is liable for maintenance and cure to a seaman the court said (p. 731): " Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. * * * The traditional instances are venereal disease and injuries received as a result of intoxication, though on an occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore. Other recent cases, however, disclose a tendency to expand these traditional exceptions." In other words the courts have been liberal in their attitude toward seamen who receive injuries on shore leave through their notorious penchants not stemming from intoxication or deliberate acts of indiscretion; neither is established in the present case under the facts adduced. The plaintiff in the court's opinion is entitled to recover. The question remaining is how much; cases have been cited which have variously held a range for maintenance between $2.50 to $4 a day; this court in the case of *Proctor* v. *Sword Line, Inc.* (N. Y. L. J., Jan. 21, 1948, p. 259, col. 1) held that $5.20 a day was a reasonable allowance for maintenance; considering the costs of living and lodging under the standards prevailing in the recent times involved in this claim which differ no whit from those obtaining now, the court adheres to its prior determination that $5.20 a day is a fair and reasonable allowance for maintenance.

Motions by defendant upon which decision was reserved to dismiss the complaint are denied with exceptions to defendant. Judgment for plaintiff against defendant for $187.20 for thirty-six days of maintenance at $5.20 a day. As findings of fact and conclusions of law were waived at the trial let the clerk enter judgment accordingly. Ten days' stay and thirty days to make a case is granted defendant after service upon its attorneys of the judgment herein with notice of entry. Exhibits may be had at chambers.