Willis E. RESSLER,
Plaintiff-Appellant,
v.

STATES MARINE LINES, INC.,
Defendant-Appellee.

No. 721, Docket 73–2069.

United States Court of Appeals,
Second Circuit.

Argued April 8, 1975.

Decided May 6, 1975.

Certiorari Denied Oct. 14, 1975.
See 96 S.Ct. 193.

4. Loper v. Beto, 405 U.S. 473, 500, 92 S.Ct. 1014, 1027, 31 L.Ed.2d 374 (1972) (Rehnquist, J., dissenting).

Paul C. Matthews, New York City, for plaintiff-appellant.

Robert E. Meshel, New York City (D'Amato, Costello & Shea, New York City, of counsel), for defendant-appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER,[*] District Judge.

FRIENDLY, Circuit Judge:

Willis E. Ressler, plaintiff in this action for damages under § 33 of the Jones Act, 46 U.S.C. § 688, and for maintenance and cure under general maritime law, see Harden v. Gordon, 11 Fed.Cas. No.6,047, p. 480 (C.C.D.Me.1823); Reed v. Canfield, 20 Fed.Cas.No.11,641, p. 426 (C.D.D.Mass.1842),[1] obtained a job in July, 1967, as a bedroom steward on defendant's vessel, the S.S. Steel Architect. Plaintiff was then twenty and his voyage on that vessel was his first trip at sea. About a month into the voyage, after calling at several Asian ports, the ship docked for ten days at Bangkok, Thailand. There Ressler engaged in sexual intercourse on two occasions, allegedly for the first time. On the eastbound voyage he developed a discharge due to gonorrhea, a danger from engaging in intercourse under such circumstances of which he claimed to have been unaware. The first officer administered an antibiotic; there was a conflict of evidence as to how carefully the officer had warned Ressler about washing his hands after urinating.[2] When the Steel Architect reached Honolulu on September 15, Ressler received treatment for gonorrhea at a United States Public Health Service Hospital and later at an Army Hospital. The ship, with Ressler aboard, departed Hawaii for the Panama Canal on September 19. Several days later, his right eye became sore and swollen. He brought this condition to the attention of the ship's officer who applied acromycin ointment and washed the eye out with boric acid, but there was evidence from which the jury permissibly concluded that more should have been done. On arrival at Panama on October 1, Ressler was admitted to Gorgas Hospital where the diagnosis was "conjunctivitis, right eye, secondary to Neiserra gonorrhea, corneal ulceration with perforation." After twenty days he was discharged to outpatient status. Defendant paid maintenance and cure until April 20, 1968. On September 30, 1968 a corneal transplant operation was performed at the Public Health Service Hospital at New Orleans; unhappily the operation was not successful and Ressler has no useful vision in his right eye. Thereafter he was hospitalized again but refused further surgery. The eye developed secondary glaucoma, which has to be controlled by drops.

Ressler claimed that, as a result of this impairment of his vision, he had experienced difficulty in finding and keeping employment. As against the approximately $1,500 earned on his ill-starred two and a half months voyage on the Steel Architect, his earnings were $2,335 for a part of 1969, when he returned to work about Easter; $3,944 for 1970; slightly more than $2,000 for 1971; $2,237 for 1972; and $1,140 in 1973 up to the date of trial in late May.

Over plaintiff's objection Judge Weinfeld dismissed the claim for maintenance

---

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

1. In his original complaint Ressler stated a third cause of action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., for alleged failure to have rendered him appropriate medical treatment. On unopposed motion of the United States under Fed.R.Civ.P. 12(b), the action against it was dismissed since plaintiff had failed to file a claim with the appropriate federal agency prior to commencing the action as 28 U.S.C. § 2675(a) requires.

2. The first officer testified by deposition that he had instructed Ressler to wash his hands carefully. Ressler denied this, although he did admit that the first officer had told him to "try to keep clean."

and cure on the authority of the oft-cited dictum in Aguilar v. Standard Oil Company, 318 U.S. 724, 731, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), of which more hereafter, and thus did not have to reach the questions how long the obligation to provide such benefits would continue, see Gilmore & Black, Admiralty §§ 6–10, 11 and 12 (2d ed. 1975), a point on which Ressler is now aided by Vella v. Ford Motor Co., 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975), and how the maintenance liability was related to Ressler's claim for loss of earnings from October 1, 1967, see id. § 6–12 at 309. The judge put seven questions to the jury which they answered as follows:

Question 1: Do you find that Ressler has established his claim of unseaworthiness?
'No'

Question 2: Do you find that Ressler has established his claim of negligence?
'Yes'

Question 3: What sum do you find as damages for (a) pain and suffering to date including the nature of his injuries?
'$15,000'

(b) Future pain and suffering, if any?
'$15,000'

(c) Loss of wages from date of occurrence to present?
'$30,000'

(d) Future loss of wages, if any, he is reasonably likely to sustain?
'Zero'

Question 4: What is the total amount of damages?
'$60,000'

Question 5: Did the defendant sustain its burden of proof on contributory negligence?
'Yes'

Question 6: If the answer is 'yes', what percentage?
'40%'

Question 7: Deducting the percentage from the total amount of damages referred to in 4, what sum do you find plaintiff is entitled to recover?
'$36,000'

Plaintiff's counsel moved to set aside the verdict on the ground that the awards for pain and suffering and the zero award for future loss of wages "were so inadequate as to shock the conscience of the Court." Stating that the conscience of the court was not shocked "in the slightest degree" and that he regarded the result as "eminently fair", Judge Weinfeld denied the motion and entered judgment on the verdict. The sole issues pressed on appeal are his withdrawal from the jury of the claim for maintenance and cure after April 20, 1968, and the jury's failure to make any award for future loss of wages.

In Aguilar, supra, 318 U.S. at 731, 63 S.Ct. at 934, after expatiating on the broad scope of the shipowner's liability for maintenance and cure ("Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it"), Mr. Justice Rutledge stated:

Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection.

He added:

The traditional instances are venereal disease and injuries received as a result of intoxication, though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore.

(Footnotes and references thereto omitted). Plaintiff's counsel calls attention to some authority, notably Bentley v. Albatross S.S. Co., 203 F.2d 270 (3 Cir. 1953), which has taken advantage of the Court's qualification with respect to intoxication.[3] Arguably, engaging in sexual intercourse while ashore after a long voyage, especially by an unmarried man as Ressler was, has become—perhaps always was—as much "a classic predisposition" of sailors as excessive indulgence

3. Even the qualification for intoxication has not been followed in all cases. See Victoria v. Luckenbach S.S. Co., Inc., 141 F.Supp. 149 (S.D.N.Y.1956), aff'd 240 F.2d 349 (2 Cir. 1957) (per curiam).

in alcohol. See Gilmore & Black, *supra*, at 290–91. However, there is as yet no authority for disregarding Mr. Justice Rutledge's dictum that when venereal disease is contracted through intercourse, the shipowner is not liable for maintenance and cure. A rather light hearted lower New York court opinion, Koistinen v. American Export Lines, Inc., 194 Misc. 942, 83 N.Y.S.2d 297 (N.Y. City Ct. 1948), purported to distinguish the *Aguilar* dictum on the basis that while the plaintiff, who had been injured in Jugoslavia as a result of jumping from a window to escape from the room of a female companion—exit by the door being impeded by her threatening male associate—"did not accompany the woman to her room for heavenly contemplation," he had "abandoned that purpose before consummation", and that in any event the injury did not result from execution of his original sinful intent; what incapacitated him for 36 days was not "venereal disease", whereof Mr. Justice Rutledge spoke, but injury from the jump. The present case, where any recovery of maintenance and cure would be for no more than a few months in any event, would be a rather poor vehicle for an inferior court to make the appropriately rare prediction that the Supreme Court will no longer abide by what it has clearly said.

We have been considerably more troubled by the jury's failure to award any damages for loss of future earnings. Plaintiff first contends that this is inconsistent with the rest of the jury's special findings. Primarily we note that counsel did not raise the inconsistency point before the district court; as mentioned above, his only objection was that certain of the damages awarded were grossly inadequate. We also emphasize that we are here dealing not with a series of special verdicts under Fed.R.Civ.P. 49(a), but with the validity of a general verdict accompanied by a series of interrogatories under Fed.R.Civ.P. 49(b).

It is not clear precisely in what way plaintiff considers the jury's failure to award him any damages for loss of future earnings to be inconsistent with its other "special findings". In his brief he contends that since the jury found loss of wages in the amount of $30,000 to the date of trial and also "past and future pain and suffering", its failure to award future loss of wages "can be accounted for only if the jury misunderstood or ignored the Court's charge". However, this combination of responses to the interrogatories would not on its face appear inconsistent; the answers are not irreconcilable to an extent that we would feel required, or even permitted, to remand for a new trial, even one limited to the question of future lost wages. The jury quite reasonably could have awarded $30,000 for lost earnings up to the date of the trial as compensation for the period in which Ressler was undergoing treatment prior to his last operation and a reasonable time for recovery thereafter, plus an additional sum for loss of wages during the period in which he could have been expected to be seeking new permanent employment. Viewed in these terms the award for lost wages in the past is not inconsistent with the conclusion that there was no permanent reduction in his future earnings capacity. Similarly, the award of damages for future pain and suffering is not inconsistent with the failure to award damages for loss of future earnings since the jury may quite reasonably have concluded that whatever discomfort Ressler would suffer in the future, the thrice daily use of eye drops would sufficiently reduce the pain as not to interfere significantly with his ability to obtain or keep employment. We have been instructed that:

> Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment.

A&G Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962).

■ Ressler also contends that even if the answers were not inconsistent, the "uncontradicted evidence" conclusively demonstrated that his future earnings in fact would be lower than they otherwise might have been or, alternatively, that as a matter of law the loss of one eye inevitably decreases a person's earning capacity, particularly when the person is illiterate. It is doubtless true that, although there are many jobs for which ability to use both eyes is not essential, prospective employers prefer to hire persons not so handicapped, if only because of fear over an industrial accident to the useful eye. As indicated above, Ressler gave some testimony that he had encountered difficulty of this sort; moreover that his limited vision had impeded his performance of one of the jobs he had been able to obtain. On the other hand, the depressing effect of this disability is hard to quantify, especially for the long period of Ressler's prospective employability, and the jury could have been impressed by the fact that he had had some success in finding different forms of employment.[4] And of course the jury may have disbelieved portions of his testimony. Indeed the entire testimony with respect to his loss of earnings was extremely sketchy. It appears that except for assistance he had rendered his mother on a newspaper route, he had had no other employment prior to the sea voyage. Moreover, because the Public Health Service had marked him "unfit for duty", Ressler had never made any inquiry with anyone concerning the possibility of his obtaining another position on a ship, perhaps one limited to intercoastal service. The limitation on earning power due to his illiteracy cuts both ways; this was not the usual situation of a young man likely to progress up the salary ladder. In sum, this is not a case where the "uncontradicted evidence" pointed unerringly to the conclusion that the plaintiff's future earning capacity had been diminished in an amount for which a jury was bound to allow, or where such an award is required as a matter of law.

■ If we view the case simply as an appeal from a refusal of the district court to set the verdict aside as inadequate, the only ground put to the district judge, we are bound to affirm. The standard for reviewing the refusal of a trial judge to disturb a verdict as inadequate is the same as when he has refused to upset one as excessive. Caskey v. Village of Wayland, 375 F.2d 1004, 1007–08 (2 Cir. 1967); Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij, 471 F.2d 705 (2 Cir. 1972) (*per curiam*), cert. denied, 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393 (1973). In that situation we have stated that we are "not to decide whether we would have set aside the verdict if we were presiding at the trial, but whether the amount is so high that it would be a denial of justice to permit it to stand" and that "[w]e must give the benefit of every doubt to the judgment of the trial judge." Dagnello v. Long Island R.R., 289 F.2d 797, 806 (2 Cir. 1961) (Medina, J.). There was nothing to indicate that the jury was prejudiced against Ressler; its $60,000 verdict before deduction for contributory negligence, considered as a whole, was not ungenerous. Taking everything into account, we cannot find that the experienced judge, who had seen and heard Ressler, abused his discretion in refusing to set the verdict aside.

Affirmed.

---

4. Ressler held positions, among others, as a gas station attendant and the night manager of grocery store; he also worked for a department store and a builder of prefabricated homes.