**Kathy L. LAVOIE, formerly known as Kathy L. LaBelle, Plaintiff–Appellee,**

v.

**PACIFIC PRESS & SHEAR COMPANY, A DIVISION OF CANRON CORP., and Canron Corp., Defendants–Appellants.**

No. 1132, Docket 91–7774.

United States Court of Appeals, Second Circuit.

Argued March 27, 1992.

Decided Sept. 10, 1992.

Frederick S. Lane, III, Burlington, Vt. (Robert H. Erdmann, Dinse, Erdmann & Clapp, of counsel), for defendants-appellants.

Robert G. Cain, Burlington, Vt. (Christopher J. McVeigh, Paul, Frank & Collins, Inc., of counsel), for plaintiff-appellee.

Before: NEWMAN and CARDAMONE, Circuit Judges, and SAND, District Judge.*

CARDAMONE, Circuit Judge:

This appeal presents a question of waiver. After a young industrial worker suffered a severe injury caused by the equipment she was operating, she sued and obtained a substantial verdict at the hands of a jury. The equipment maker asserts for the first time on appeal that written questions and a verdict form submitted by the trial judge and responded to by the jury resulted in an inconsistency that entitles it to a new trial. Because defendant had

* Hon. Leonard B. Sand, United States District Court Judge for the Southern District of New

ample opportunity—as well as notice of the possible inconsistency to which it presently objects—throughout the entire trial proceedings from pre-trial conference to judgment, yet failed to speak, it must now be ruled that it should hold its peace.

Defendants Pacific Press & Shear Company (Pacific) and Canron Corp., its corporate parent (collectively Pacific or defendant), appeal from a judgment of the United States District Court for the District of Vermont (Coffrin, J.) entered following a jury verdict finding defendants liable for negligently injuring plaintiff Kathy Lavoie during her course of employment with the General Electric Company (GE). While operating a hydraulic brake press used for sheet metal forming, plaintiff's left hand was crushed, resulting in the loss or partial loss of three fingers and the loss of use of a fourth finger. The jury found in response to written questions submitted by the court that Pacific was not strictly liable and had not breached a warranty of merchantability or a warranty of fitness for a particular purpose. But in answering the same submitted questions, it did find Pacific negligent and held it liable for 85 percent of plaintiff's injuries. The jury awarded her $412,250 in damages. Insisting the answers to the interrogatories are irreconcilably inconsistent and that the verdict is not supported by the evidence, Pacific brings the present appeal seeking a new trial. We affirm.

BACKGROUND

On February 13, 1985, Kathy LaBelle Lavoie, an employee of GE in Burlington, Vermont, was assigned to operate a hydraulic press brake that was designed, manufactured, and sold by Pacific Press, a division of Canron Corporation. She had recently finished GE's two year apprentice program and had become a full-time hourly machine operator in the company's sheet metal fabrication facility, though with only 25 hours experience operating defendant's press brake.

York, sitting by designation.

The events surrounding the accident are not fully known because there were no witnesses and Lavoie experienced traumatic amnesia as a result of her injuries. Coemployees who observed Lavoie operating the press brake stated she was operating the machine carefully and in a normal fashion prior to the accident. They said they heard her suddenly scream and found her collapsed at the machine with her left hand crushed between its "jaws". After she was released from the machine and was waiting for medical attention, Lavoie told them she had "tripped and kicked it," probably meaning she had accidentally triggered the foot pedal, the sole means of activating the press brake. The location of injuries on Lavoie's hand indicated she might have tripped and caught it in the tooling area of the machine as she attempted to break her fall. The manager of safety at the GE plant tested the machine immediately after the accident and found it functioning properly. Lavoie, who was 21 years of age at the time, incurred medical and hospital expenses in the amount of $34,745.28 and lost $36,724.95 in wages. She has since resumed her employment with GE in a salaried manufacturing position in the materials purchasing department.

Pacific sold the model J110–8 hydraulic press brake to GE in 1972. It is capable of exerting up to 110 tons of compressive pressure in its tooling area, and is designed to accept a variety of tool and die shapes, permitting it to form an almost infinite number of different shapes of metal. Allegedly because Pacific could not predict what applications GE sought for its machine, it was delivered without safety equipment. The press brake was actuated solely by a foot pedal whose entry port had no guard. Its unguarded entry port permitted the machinery to be accidentally started by the inadvertent entry of foreign objects or by an operator's foot. And, because the foot pedal was attached to the machine by a long, flexible cable, it could be positioned adjacent to the machine as well as at a distance far from it.

GE was not an expert in equipping press brakes with safety devices, and had little experience in retrofitting such machines. In 1983 it added three safety devices to the press brake, two of which were not favored or used by employees because they were either inadequate or hazardous themselves. The third was a "light curtain", a device that could sense a foreign object—such as a person's hand or arm—within the tooling area and would stop the machine. The light curtain GE installed was not integrated with the press brake's power supply, a condition that permitted operation of the machine without the use of the safety device. After the accident, this safety device was found to be functioning properly but apparently was not in operation at the time of the accident.

Plaintiff presented evidence at trial showing that, even without knowing the particular uses a customer planned for Pacific's press brake, it was economically and technologically feasible for defendant at the time of the sale to equip the machine with numerous safety devices recognized in the industry, ones that were provided by other manufacturers on similar machines. For example, Pacific's press lacked an operator handle bar designed to help the operator maintain her balance; it had no emergency stop switch; and its foot control pedal design did not include a device to prevent accidental activation by the operator. In each case, plaintiff's proof showed the safety devices had been identified in the industry as recommended minimum safety standards in its American National Standard Safety Requirements.

Lavoie also claimed two other safety devices were economically and technologically feasible and did not depend on the particular use a customer planned for the press brake. Dual hand controls were recognized in the industry as effective means for activating the machine while preventing an operator's hands from entering the tooling area during the machine's cycle. An "interlocked" light curtain also could have been included with the machine. An interlocked light curtain is one that is electrically integrated with the press brake itself; as such, the machine cannot operate when the light curtain is turned off.

Lavoie offered considerably more evidence, including the fact that despite Pacific's statements to the contrary, the press had no safety devices and did not comply with OSHA regulations. Further evidence relating to the post-sale duty to warn issue was presented reflecting that defendant was aware of at least 33 similar accidents involving severe injuries to the hands of operators using its hydraulic press brake, 22 of which resulted in litigation, and all of which occurred prior to Lavoie's accident. Despite this knowledge, Pacific never contacted GE to warn it of the dangers its machine posed, to inquire into the adequacy of GE's selection of retrofitted safety devices, or to advise GE of the availability of improved safety devices meeting industry standards and the functional limitations of other safety devices considered inadequate by the industry.

Plaintiff filed suit in the District of Vermont in February 1989 alleging defendants were liable in strict liability for selling a product that was unreasonably dangerous, for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose, and for negligence. A trial on the merits was held from May 14–25, 1991. At the conclusion of the trial, following a precharge conference, the jury was instructed on the law pertaining to these four alternative theories of liability. The trial court instructed the jury specifically on the theory of negligence as separate and independent from the strict liability and the two warranty theories. No objection was made by defendant at the charging conference or during the charge itself regarding any inconsistency between the different theories of liability, nor did defendant interpose an objection respecting the submission of separate interrogatories and separate general verdict forms to the jury pertaining to each theory.

Although the jury found Pacific not liable for breach of either warranty or on grounds of strict liability, it found both plaintiff and defendant negligent and assigned 85 percent of the liability, or $412,250 in damages, against defendant. Subsequent to the verdict, the jurors were indi-

vidually polled, and a bench conference was held with counsel. Again, inconsistency of the verdicts was not raised on any of these occasions.

After the jury was discharged and before the judgment was entered, defendant moved on May 30, 1991 for judgment notwithstanding the verdict or, in the alternative, for a new trial. Pacific declared that insufficient evidence supported the jury's finding of negligence on defendant's part, the evidence plainly showed the conduct of GE's employees was an efficient intervening proximate cause, and the verdict was the product of jury sympathy. Once again, no objection on the ground of inconsistency was noted. The trial court denied these motions.

## DISCUSSION

On defendant's appeal from the $422,536.35 judgment, it challenges for the first time the verdicts the jury handed down as irreconcilably inconsistent. It contends, therefore, negligence is entirely subsumed by breach of warranty and strict liability. Findings of no liability under either of those theories require, as a matter of law, a finding of no negligence on its part as the seller. Defendant alternatively contends the evidence adduced at trial is insufficient as a matter of law to support a finding of negligence.

## I SPECIAL VERDICTS OR A GENERAL VERDICT

The parties disagree whether the forms submitted to the jury called for special verdicts, as contemplated by Fed.R.Civ.P. 49(a), or a general verdict accompanied by written answers to interrogatories, as contemplated by Fed.R.Civ.P. 49(b). The trial court submitted two sets of forms to the jurors for their use in reporting their decisions. First, on a form with "Special Verdict" printed across the top, the jury was asked whether defendant breached either of the two implied warranties, whether it was strictly liable, whether it or plaintiff was negligent, whether any of these findings were a proximate cause of plaintiff's

injuries, and what percentage of contribution and amount of damages was attributable to each cause of the injuries. The trial court also requested the jury to complete a second form labeled "Verdicts" that asked whether defendant was liable to plaintiff under each of the four alternative theories and for what amount.

Rule 49 of the Federal Rule of Civil Procedure states that a trial court may request from a jury a special verdict or a general verdict accompanied by answers to interrogatories. Under Rule 49(a) special verdicts are described as "a special written finding upon each issue of fact." A general verdict accompanied by answers to interrogatories, provided for in Rule 49(b), permits a jury to make written findings of fact and to enter a general verdict. The distinction between the two provisions is that under Rule 49(a) the jury answers primarily factual questions for the benefit of the trial court which then applies the law to those answers. Under Rule 49(b), the jury after being fully instructed answers the interrogatories, renders a general verdict and the trial court enters judgment on the jury's verdict. *See* 5A Moore's Federal Practice ¶¶ 49.02, 49.03[3].

In this case, the trial court's first set of forms called for answers to specific questions that would have served as either special verdicts, as contemplated by Rule 49(a), or answers to interrogatories, as contemplated by Rule 49(b). But the second set of forms was a hybrid; it did not offer the jurors only the ultimate choice normally called for by a general verdict—the defendant is liable to the plaintiff for a specified amount of damages, or the defendant is not liable to the plaintiff. Instead, it purported to ask for general verdicts on different theories of liability. Since the jury's fact-finding with respect to the different theories of liability was already properly elicited by the first set of detailed questions, the jurors should have been asked on the general verdict form only whether the defendant was liable to the plaintiff, and, if so, what damages are awarded. Despite the somewhat unusual nature of the general verdict forms submitted to the jury, it is apparent that the trial judge was endeavoring to use the provisions of Rule 49(b) and was seeking a general verdict accompanied by answers to interrogatories.

■ Although Rule 49(a) provides no instructions to the trial court for resolving jury inconsistencies in its special verdicts, we have held that judgment may not be entered pursuant to inconsistent special verdicts. *See Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 890–91 (2d Cir.1988). Rule 49(b) instructs the trial court how to proceed when there are inconsistencies between the answers to the interrogatories and the general verdict. "When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial." Fed.R.Civ.P. 49(b); *see also Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 634 (2d Cir.1986).

■ Where there are seeming inconsistencies between interrogatory responses and a general verdict, a trial court should normally attempt to reconcile them. When the verdicts are not capable of reconciliation and resubmission of the determinations for reconsideration or clarification is not possible because the jury has been discharged, a new trial may be—but is not always—required. *See, e.g., Machleder v. Diaz*, 801 F.2d 46, 57–58 (2d Cir.1986) (seemingly inconsistent verdicts should be reconciled if possible), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987); *Henry v. A/S Ocean*, 512 F.2d 401, 405–06 (2d Cir.1975) (same); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1289–1290 & n. 17 (2d Cir.1969) (though inconsistency might have warranted a new trial ordered by district court, it may nonetheless stand on appeal), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *United States Football League v. National Football League*, 644 F.Supp. 1040, 1045–46 (S.D.N.Y.1986) (consistent verdicts in separate claims not required), *aff'd*, 842 F.2d 1335 (1988).

The charge to the present jury required that it consider the necessary legal principles given to it by the trial court and make determinations of ultimate liability. In such case, the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form, and Rule 49(a) therefore does not apply. *See Stanton By Brooks v. Astra Pharmaceutical Products, Inc.,* 718 F.2d 553, 574–75 (3rd Cir. 1983) (though labeled special questions, jury rendered general verdicts with written interrogatories when it made findings of ultimate liability); *Ressler v. States Marine Lines, Inc.,* 517 F.2d 579, 582 (2d Cir.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975); *United States v. Diapulse Manufacturing Corp. of America,* 389 F.2d 612, 614–15 (2d Cir.) (where accompanied by general verdict, even specific questions of fact submitted to jury are not special verdicts but rather written interrogatories), *cert. denied,* 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968). Further, the alleged inconsistency to which defendant points is between two *general verdicts* on different legal theories and not between a general verdict and responses to interrogatories. Hence, the instruction given to trial courts under Rule 49(b) has no application.

## II WAIVER

### A. *Defendant's Conduct*

In any event, we think defendant waived its challenge to the jury verdict as inconsistent. It had ample opportunity to raise its objection to the alleged inconsistency and the course of the trial proceedings put it on notice that an inconsistency might arise. At a bench conference before the parties made their opening statements, Judge Coffrin noted the potential for inconsistencies between the four theories of recovery plaintiff alleged. He commented on the overlapping nature of the alternative theories again on the last day of trial. The instructions he gave the jury were discussed in detail with counsel at a precharge conference and at the bench just prior to the actual charge. Counsel were well aware of the content of the verdict forms submitted to the jury, including the separate questions relating to the four alternative theories.

After the jury returned its verdict, the district court polled the jurors individually and held a brief conference at the bench prior to the jury's discharge during which aspects of the verdict were discussed with counsel. Post trial motions were filed on May 30, 1991 and a hearing held on them on July 15, 1991. At no time throughout all these proceedings did defendant's counsel suggest the possibility that the verdicts rendered were inconsistent. As already stated, this issue was raised for the first time on the instant appeal. Seeking to avoid having its challenge to the jury's verdicts barred by the doctrine of waiver, defendant advances tactical trial reasons for its failure to object, and relies as well on our prior case law.

### B. *Tactical Reasons*

Vermont permits strict liability and negligence to be presented to juries as alternative theories of recovery, *see, e.g., Brennen v. Mogul Corp.,* 557 A.2d 870, 870–72 (1989), though no court in Vermont has ruled specifically on whether negligence is subsumed within the theory of strict liability, that is, whether a finding of negligence but a finding of no strict liability are inconsistent with one another. Defendant asserts it had no reason therefore to object to the form of the jury charge because findings of strict liability but no negligence—the opposite of which is presently before us—are not inconsistent. The jury instructions and questions submitted on the verdict form do not support defendant's position. Both expressly provided that the jury might find Pacific was negligent but not strictly liable.

For instance, in his instructions Judge Coffrin stated: "[w]hether or not you find Defendant Pacific strictly liable you must go on to consider the Plaintiff's next claim against Pacific, the claim that Pacific was negligent." Defendant's proffered excuse for not objecting to the charge would only make sense logically if the district court had given a charge in the reverse order:

"if you find defendant not strictly liable, you must also find it not negligent. On the other hand whether or not you have already found defendant negligent you may go on to determine whether it is strictly liable." In addition, in both verdict forms, the jury is asked to determine whether defendant was negligent *after* it has first determined if defendant was strictly liable. Again, defendant's reason for failing to object would make sense only if the questions posed to the jury were in reverse order.

■ Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection. Fed.R.Civ.P. 51; *Hagelthorn v. Kennecott,* 710 F.2d 76, 85 (2d Cir.1983). Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions. *See Lopez v. Oldendorf,* 545 F.2d 836, 839 (2d Cir.1976) (objection to allegedly inconsistent verdicts waived when party failed to object to charge which instructed jury "you must consider and make a separate determination as to this second or alternative theory no matter how you decide the [first] theory"), *cert. denied,* 431 U.S. 938, 97 S.Ct. 2650, 53 L.Ed.2d 256 (1977).

## C. *Prior Case Law*

Contending that in this Circuit the possibility of a party waiving its right to challenge the consistency of verdicts has been rejected, Pacific cites *Finnegan v. Fountain,* 915 F.2d 817 (2d Cir.1990), *Auwood,* 850 F.2d 884, and *Schaafsma,* 802 F.2d 629. *Auwood* involved an objection to inconsistent special verdicts made after the jury was discharged but before the trial court entered judgment. We held that objections to the verdict made after a jury is discharged are not waived and require the trial court to attempt to reconcile the verdicts before ordering a new trial. *See* 850 F.2d at 891. Ultimately, we reconciled the verdicts and affirmed the award. *Id.* at 893.

In *Schaafsma,* allegedly inconsistent interrogatories not objected to until post-trial motions nevertheless were also found reconcilable. Although the failure to object before the jury was discharged was accorded "some weight" on appeal, we noted Rule 49(b) required the trial court to order a new trial in the event the interrogatories could not be reconciled, even when no objection had been made. 802 F.2d at 634–35. Neither *Auwood* nor *Schaafsma* cited *Haskell v. Kaman Corp.,* 743 F.2d 113 (2d Cir. 1984), where we declared no new trial was required to reconcile inconsistent verdicts under Rule 49(b) if the objecting party failed to make known its complaint before the jury was discharged. *Id.* at 123. *See also United States Football League v. National Football League,* 842 F.2d 1335, 1367 (2d Cir.1988) ("failure to bring alleged inconsistencies in the verdict sheet to the court's attention before the jury has been discharged waives the right to have the alleged inconsistencies remedied in a new trial"). *Compare also* 5A Moore's Federal Practice ¶ 49.04 (failure to timely object results in waiver) *with* Wright & Miller, Federal Practice and Procedure § 2513 (when jury returns inconsistent verdict, judgment may not be entered; waiver not recognized).

To hold that defendant has waived its opportunity to object to the alleged inconsistent verdicts in the present case does not undermine *Auwood* or *Schaafsma.* The fact that defendant never objected before the trial court entered judgment distinguishes this case. Nor is today's holding contrary to *Finnegan,* for there we simply determined that an appellate court—confronted with potentially inconsistent special verdicts unnoticed by the parties and the trial court—had *the power* to review the judgment and order a new trial. 915 F.2d at 820–21. That the appellate court has *the power* to review a judgment entered pursuant to inconsistent findings of fact is not the same as saying it is *required* to reconcile allegedly inconsistent verdicts. In *Finnegan* we elected, *sua sponte,* to exercise our discretion and review the judgment and order a new trial due to inconsistent special verdicts. Defendant's strategic reasons

and citation of prior case law do not persuade us to overlook its conduct.

### D. Seventh Amendment Implications

■ Carefully considering constitutional implications and pertinent policy arguments also fail to change our view that there has been a waiver here. Federal appellate courts generally will not reach non-jurisdictional issues not raised below and may decide, within their sound discretion, which prudential matters may be reviewed for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976). *See also Yee v. City of Escondido*, — U.S. —, —, 112 S.Ct. 1522, 1531, 118 L.Ed.2d 153 (1992); *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). That Seventh Amendment considerations may be raised by the entry of inconsistent verdicts does not require us to entertain the objection on appeal.

■ In suits at common law, the Seventh Amendment declares that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." When a judgment is entered pursuant to inconsistent findings of fact—such as special verdicts or answers to interrogatories—the trial court necessarily is sanctioning one factual finding at the expense of its inconsistent counterpart. Thus, Seventh Amendment implications of re-examination by the court of a jury finding of fact are raised. But when a court enters judgment pursuant to inconsistent verdicts—without contradictory factual findings by the jury—the same unconstitutional re-examination of the jury's factual determinations is not present.

■ Moreover, objections raising constitutional protections may be waived or "forfeited" *see, e.g.,* LaFave & Isreal, Criminal Procedure §§ 11.3(c) n. 7, 26.5(c) n. 13, in the same manner as lesser objections, for instance, those of a procedural nature. *See, e.g., Yee,* — U.S. at —, 112 S.Ct. at 1531 (substantive due process questions waived for failure to raise below); *United States v. Benitez,* 920 F.2d 1080, 1087–88

(2d Cir.1990) (evidentiary challenges claimed to raise Sixth Amendment Confrontation Clause implications waived); *United States v. Colon,* 905 F.2d 580, 588 (2d Cir.1990) (6th Amendment right to counsel claim waived); *United States v. Torres,* 901 F.2d 205, 228 (2d Cir.) (objection to jury instruction under the *Ex Post Facto* Clause may be waived), *cert. denied,* — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Thus, to whatever extent inconsistent verdicts raise such implications, the Seventh Amendment right to a jury trial clearly may also be waived. *See* Fed.R.Civ.P. 38(d); *Hodges v. Easton,* 106 U.S. 408, 412, 1 S.Ct. 307, 310, 27 L.Ed. 169 (1882).

■ Further, as an adjunct to the fair administration of justice, courts sometimes entertain a challenge where a litigant had an insufficient opportunity to raise an objection before the trial court. Given the abundant opportunities defendant had, even after the jury was discharged, it may not avail itself of this policy exception from the waiver rule. Nor do we think this case presents so plain an error that it should be entertained in order to prevent a miscarriage of justice. Pacific's own failure to question the reconcilability of the verdicts, as well as the trial court's failure to do so, indicate the subtle, rather than plain, nature of the alleged error. As earlier noted, consistency between verdicts is not always required. *See, e.g., Dunn v. U.S.,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356; *Globus,* 418 F.2d at 1290 n. 17; *Malm v. United States Lines Co.,* 269 F.Supp. 731, 731–32, & nn. 1 & 2 (S.D.N.Y.1967) (provided challenged verdict is supported by facts and law, jury entitled to "idiosyncratic," though inconsistent, verdicts).

In addition, Vermont courts permit plaintiffs to bring alternative claims of strict liability and negligence, and have not ruled that strict liability necessarily subsumes negligence. In fact, other courts are divided on the issue of whether a finding of negligence and a finding of no strict liability are inconsistent. *Compare, e.g., Randall v. Warnaco, Inc., Hirsh–Weis Div.,* 677 F.2d 1226, 1231–32 & n. 5 (8th Cir.1982) (findings of no strict liability but

negligence not necessarily inconsistent) with *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1280 (11th Cir.1984) (same findings inconsistent); *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 860 (4th Cir.1980) (same), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). We think the interests of finality and efficient use of scarce judicial resources, as well as the strong risk of strategic abuse by litigants, *see, e.g., Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir.1987); *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 133 (1st Cir. 1987), militate against our reaching defendant's objection regarding the alleged inconsistent verdicts that it raises for the first time on appeal.

### III

Defendant's second contention is that insufficient evidence was presented at trial to support the jury finding of negligence. To begin, defendant contends plaintiff failed to present enough evidence to support a finding that it breached a post-sale duty to warn. It also asserts the conduct of Lavoie's co-workers constituted an efficient intervening cause of her injuries which relieved it of any liability. Neither argument is persuasive.

Pacific attempts to limit review of the evidence supporting a negligence claim by suggesting we consider only that theory of negligence that might co-exist with a finding of no strict liability. Having already determined that Pacific waived its objection based on an inconsistency, if any, in the verdicts, our review is not limited to the sufficiency of the evidence of that theory of negligence which is reconcilable with a finding that the manufacturer is not strictly liable. Instead, we review the evidence under the general and much broader theory of negligence: whether Pacific, as manufacturer of the press brake, failed to employ that degree of care, both during and after the sale, that a reasonably prudent manufacturer would have taken under similar circumstances.

 Defendant's burden in this regard is a substantial one. In Vermont, only verdicts that are not "justified by 'any reasonable view of the evidence'" will be

overturned. *See Claude G. Dern Electric, Inc. v. Bernstein*, 144 Vt. 423, 479 A.2d 136, 138 (1984) (quoting *Crawford v. State Highway Board*, 130 Vt. 18, 285 A.2d 760, 764 (1971)). A jury finding of negligence will be preserved unless reasonable persons reviewing the record, construed in favor of the prevailing party, *Bernstein*, 479 A.2d at 138, could not draw different conclusions and would reach a different result. *Tufts v. Wyand*, 148 Vt. 528, 536 A.2d 541, 541–42 (1987). Federal law applies a similar standard. *See Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 169 (2d Cir.1980). The record reveals an ample basis for the finding of negligence by Pacific, and we therefore need not select between federal and state standards. *See Simblest v. Maynard*, 427 F.2d 1, 4–5 (2d Cir.1970); 5A Moore's Federal Practice ¶ 50.06 (2d ed. 1992).

Defendant contends further that a finding of negligence against it may not stand because it was not a proximate cause of plaintiff's injuries. Pacific points to testimony that Lavoie would not have been injured if her co-workers had not turned off the non-integrated light curtain which GE had installed to protect operators of the machine. The alleged negligence of plaintiff's co-workers constituted, defendant continues, an efficient intervening cause of the injuries, making any negligence by defendant merely a contribution to but not a cause of the accident. We disagree.

 Like the predicate question of negligence, the issue of proximate cause is one for the jury, *Tufts*, 536 A.2d at 541, and nonprevailing parties who seek to challenge such findings face similar substantial burdens. *Id.; see also Roberts v. State of Vermont*, 147 Vt. 160, 514 A.2d 694, 695–96 (1986). The law in Vermont makes clear that more than one act of negligence, each contributing to produce a harm, may be a concurring proximate cause. *Tufts*, 536 A.2d at 542. Proximate cause requires a causal connection between the act for which defendant is responsible and the resulting flow of injurious consequences. *Rivers v. State of Vermont*, 133 Vt. 11, 328 A.2d 398, 400 (1974). If negligent conduct by a third person was a foreseeable consequence that, "in the eye of the law, the

person charged was bound to anticipate, the causal connection is not broken." *Beatty v. Dunn*, 103 Vt. 340, 154 A. 770, 772 (1931); *see also Paton v. Sawyer*, 134 Vt. 598, 370 A.2d 215, 217 (1976). Defendant must anticipate the creation of danger to others through the negligent acts of third persons acting on its own negligence. "The duty is to foresee, and the defendant will not be excused because of a failure to anticipate what he was bound to comprehend as a possible consequence." *Paton*, 370 A.2d at 217. "[I]f the initial negligence creates a situation making it likely that some other force or action will occur and bring about harm, responsibility remains with the original actor." *Dodge v. McArthur*, 126 Vt. 81, 223 A.2d 453, 455 (1966). Our review of the jury instruction reveals that the trial court properly instructed the jury on Vermont's law of intervening proximate cause.

■ Once again defendant fails to sustain its heavy burden for overturning findings of the jury, this time that defendant's negligence was a proximate cause of plaintiff's injuries. Sufficient evidence is present in the record that supports the finding that Pacific should have anticipated, first, that GE would install a light curtain that was not integrated with the power supply to the press brake and, second, that a GE employee might turn on the press brake without using the light curtain. Reasonable persons could conclude that GE, a company not in the business of equipping press brakes with safety devices, might have become aware of the danger posed by the brake press but nevertheless failed adequately to retrofit the machine due to its own inexperience. Such a failure on GE's part would not work to absolve defendant of liability if Pacific should have anticipated that GE's efforts would not be adequate. Similarly, the jury could reasonably conclude it was foreseeable that operators of the press brake might improperly use the machine without the aid of the light curtain if it were not integrated with the machine. This apparent likelihood is best explained by the industry practice of integrating light curtains with the power supplies of the press brakes so operation of one without the other is impossible.

In determining whether defendant's original negligence was a proximate cause of plaintiff's injuries, the jury was not limited to considering the circumstances of the light curtain. It could reasonably have concluded the failure to include an employee handle bar, an emergency stop switch, and an adequately guarded foot pedal positioned at a safe distance from the machine were also concurring proximate causes of the accident. Testimony at trial indicated the presence of any of these devices might have prevented the accident.

Thus, the failure by GE to retrofit the press brake with safety devices and the failure of plaintiff's co-workers to turn on the light curtain are not efficient intervening proximate causes of plaintiff's injuries. Pacific's original negligence was not merely a contribution to the accident, but was the proximate cause of Lavoie's injuries. Responsibility remains with it as the original actor. On that basis, the verdict of the jury must be affirmed.

## CONCLUSION

Judgment affirmed.